## SMITH v. BARRETT, Building Inspector of Logan City.

No. 5064.   Decided April 6, 1933.   (20 P. [2d] 864.)

*Geo. D. Preston* and *L. Tom Perry,* both of Logan, for appellant.

*Leon Fonnesbeck,* of Logan, for respondent.

MOFFAT, Justice.

The plaintiff and appellant, A. M. Smith, is the owner of a corner lot on the southwest corner of the intersection of Main street and Fourth South street in Logan City. The defendant and respondent is the building inspector of Logan City, Cache county, Utah. Plaintiff applied to defendant for a building permit to erect a gas and oil service station on the property owned by plaintiff and in plaintiff's application for a writ of mandate particularly described.

The application for building permit was denied because applicant had not secured written consent of the required number of property owners as required by the city ordinance, and was referred by the defendant to the city commission of Logan City. The permit was then denied by the city commission on the ground that it was in conflict with the zoning ordinance of Logan City; that it was a dangerous hazard; that plaintiff was barred by an agreement made with the city.

Plaintiff then brought action for a writ of mandate to compel the issuance of the building permit, and from the decision of the court refusing to grant the writ this appeal is taken. The defendant has interposed a motion to dismiss the appeal based upon two grounds: (a) That the appeal was not taken within six months from the entry of judgment; and (b) that no assignments of error were made, served, or filed within 15 days after filing the transcript as required by the rules of this court.

The matter of the motion should be first disposed of. The record discloses that the judgment appealed from was filed and entered on the 12th day of December, 1929. A notice of intention to move for a new trial was served and filed on December 13, 1929, and on the following day, December 14, 1929, the motion for a new trial was denied. So far as the record discloses, no notice of the action of the court on the motion for a new trial has been served or filed. Notice of appeal was served and filed. The notice of appeal bears the following indorsement:

"Filed June 13, 1930. C. V. Mohr, Clerk, by May L. Pedersen, Deputy. This notice of appeal is filed on June 13th, 1930, in lieu of Original Notice of Appeal—delivered to this office for filing on June 6th, 1930, and later taken out by Att. Geo. G. Preston, Atty., with the files, C. V. Mohr, Clerk, May L. Pedersen, Deputy Clerk."

Proof of service is made by affidavit.

Section 6991, Comp. Laws Utah 1917, provides that an appeal may be taken within six months from the entry of the judgment or order appealed from. A judgment for purposes of appeal becomes final on the overruling of a motion for a new trial. *Fuller* v. *Ferrin*, 51 Utah 105, 168 P. 1179, with cases there cited. The order denying the motion for a new trial was entered December 14, 1929. The notice of appeal was served and filed on June 13, 1930. It was within time. The motion to dismiss on that ground is denied.

There were also interposed motions (a) to strike the abstract, (b) to strike the bill of exceptions, and (c) to strike the assignments of error. We find no merit in the motion to strike the abstract, and for that reason the motion is denied. At the time of the submission of the case upon argument, leave was given by the court for the appellant to file his assignments of error, and no objection was made thereto, and that of necessity carries with it a waiver of the motion to strike the assignments of error so that the motion to strike the assignments of error is denied.

The record discloses that the bill of exceptions was duly filed within the time provided by the statute and extended by the trial court. The motion to strike the bill of exceptions is therefore denied.

Appellant's petition for a writ of mandate, in addition to the facts hereinbefore stated, sets out in full certain city ordinances relating to the creation of the office of city building inspector, his duty to issue permits upon compliance with the requirements of the city ordinances and payment of specified fees, all of which were stipulated into the record.

Certain other ordinances relating to fire zones or city zoning are also pleaded and stipulated as being the ordinaces of the city, and, as finally argued and submitted in the trial court and somewhat more narrowly argued and submitted in this court, the real question turns upon the validity of one of the ordinances so pleaded.

It appears that, after the application for the building permit was made, the city commission passed certain amendments to the ordinances, and it is upon the validity or invalidity of the amended ordinances that the denial or issuance of the writ herein depends.

The provisions of the sections referred to are as follows:

"90. Restrictions in Residence District—Any person, company or corporation wishing to conduct in the residence district, including both the residence fire district and the urban fire district, a livery stable, public garage, service station, gas reservoir, grocery store, blacksmith shop, laundry, or any other business, on the corner of a block must present to the building inspector the written consent of 60 per cent of all the frontage extending 400 feet from and along both sides of each street intersecting at said corner, also the full consent of the frontage 75 feet immediately adjoining on other side before permit will be issued. Any of the above buildings constructed within 75 feet of the corner will be considered as being on the corner."

"91. Id.—Any person, company or corporation, desiring to conduct any business as enumerated in section 90, in the residence district, including both the residence fire district and the urban fire district, at any point other than at the corner, shall present the building inspector, with the written consent of 60 per cent of the frontage extending to the adjoining corners of the block, and on both sides of

the street, also the full consent of the 75 feet immediately adjoining on either side before permit will be issued."

It is admitted the location of the property upon which the application for a permit to construct a service station is within the "residence district" as defined by the ordinaces. It is also admitted that, while the applicant for the writ of mandamus secured signatures of a part of the frontage required, he did not get the required 60 per cent of the 400 feet frontage extending from each of the four corners, nor is there anything said as to whether or not the "full consent of the frontage 75 feet immediately adjoining on either side" was obtained. The building inspector based his refusal upon the ground the applicant did not obtain consent of 60 per cent of the 400 feet above referred to. There were a number of collateral matters both pleaded and upon which evidence was presented to the trial court and upon which some assignments of error were made. In the view taken of the case by the trial court as indicated by the court's memorandum, made part of the record, all such matters except the validity of the ordinances and failure to comply therewith were immaterial and collateral. The failure to comply with the ordinances as to securing consent of the required and specified frontage is admitted by appellant, and the question depends upon the validity of sections 90 and 91 of the Revised Ordinances of Logan City passed August 16, 1929, above quoted. No question is raised as to the class or character of building, the specifications therefor, the height or location of the building lines, nor that the use or purpose to which it is proposed to subject the property is or tends to create a nuisance.

The problem before us is constitutional, and relates to the limitations thereof. Specifically, appellant contends the ordinaces violates section 1 of the Fourteenth Amendment of the Constitution of the United States, providing, "nor shall any State deprive any person of life, liberty, or property, without due process of law." The same language is

also found beginning with the word "person" of the quotation in the Constitution of Utah, art. 1, § 7, and, as said in other cases, it makes little, if any, difference to which of the Constitutions reference is made.

The constitutionality of a comprehensive zoning ordinance is not involved in this case. The matter of comprehensive zoning of American cities has received much attention and investigation. That a city may by a zoning ordinance be divided into districts based upon a general classification, such as residential, business, and industrial, is by the weight of authority now recognized. It is when we come to scrutinize the limitations, and make application of the minor provisions, and undertake the administration of such ordinances, by the application of the detailed provisions to specific instances, that more difficult questions arise as to the constitutionality of such provisions and create such diversity of opinion. Such are the situations which make it difficult, if not impossible, to arrive at a harmonizing basis. The broad and general provisions of a zoning ordinance may withstand a constitutional attack, yet, when it comes to the concrete application of detailed provisions to particular premises or particular conditions, or considered in connection with specific complaints, such provisions may be found arbitrary and unreasonable. *Village of Euclid et al.* v. *Ambler Realty Co.,* 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016. Many of the differences which seem to be conflicts disappear when this distinction is taken into account. Other cases may be harmonized upon the basis of the prohibited business being or tending to create a nuisance. The case of *Salt Lake City* v. *Western Foundry & Stove Repair Works,* 55 Utah 447, 187 P. 829, is a case of the type involving such business and at the same time the broad and general provisions of a zoning ordinance under express statutory provision vesting power in the city commission to "direct the location and regulate the management and construction of foundaries and other offensive trades and business in and within a mile of the city limits."

In the instant case we do not have the serious question which so often has arisen and over which there have been expressed many and diverse opinions, involving the provisions of an ordinance excluding from residential districts apartment houses, business houses, retail stores, and shops, and such other establishments as are expressly or by necessary implication brought under legislative control by express statutory authority. *Continental Oil Co.* v. *City of Twin Falls,* 49 Idaho, 89, 286 P. 353. It is not necessary to cite or distinguish the numerous decisions some of which adhere to the principle which restricts or tends to narrow and to restrict the power, and those which tend to recognize the apparent tendency to an extension of the power of regulation. Many of the cases and a discussion of the tendency manifested in the cases are found in the opinion written by Mr. Justice Sutherland of the Supreme Court of the United States in the case of *Village of Euclid et al.* v. *Ambler Realty Co.,* supra.

We have not before us the question as to whether or not a gas filling or gas service station is a nuisance. Nuisances may always be abated. When there is doubt as to whether or not there exists a nuisance, the maxim "Sic utero tuo ut alienum non laedas," which lies at the foundation of so much of the common law of nuisances, will often furnish a helpful clue. *Village of Euclid et al.* v. *Ambler Realty Co.,* supra.

In the absence of a posititve prohibition by statute or ordinance of a gas filling station, such business is not usually brought within the provisions of the so-called general welfare clause (See Comp. Laws 1917, § 570x87), authorizing such rules and regulations as are "necessary and proper to provide for the safety, and preserve the health, and promote the prosperity, improve the morals, peace, and good order, comfort, and convenience" of the inhabitants of a given area. Neither the law conferring the powers upon city commissioners and city councils (chapter 1, title 16, Comp. Laws Utah 1917) nor the law relating to a zoning commission, and prescribing the powers to estab-

lish, regulate, and restrict trade, industries, and uses to which property may be put in restricted districts when so established (Laws Utah 1925, c. 119), make any reference to gas filling or service stations. And, while a public service or filling station may under certain circumstances be so operated as to be a public or private nuisance, it is not a nuisance per se. *National Refining Co.* v. *Batte,* 135 Miss. 819, 100 So. 388, 35 A. L. R. 91; *Sander* v. *City of Blytheville,* 164 Ark. 434, 262 S. W. 23; *City of Des Moines* v. *Manhattan Oil Co.,* 193 Iowa 1096, 184 N. W. 823, 188 N. W. 921, 23 A. L. R. 1322; *Julian* v. *Golden Rule Oil Co.,* 112 Kan. 671, 212 P. 884; *Brown* v. *Easterday,* 110 Neb. 729, 194 N. W. 798; *Texas Co.* v. *Brandt,* 79 Okl. 97, 191 P. 166. Other cases might be cited to the same effect.

The site of the proposed location of the service station is, as shown by the allegations and proof, on the corner on the west side of Main street and south side of Fourth South street in Logan City. Main street is the main or state highway; it is paved and occupied by the track of the suburban railway. The sixth ward church is located directly across the street north from the site of the proposed service station. Many people, grown as well as children, frequent the church both during the daytime and evening. Other service stations are located within the limits of the "urban fire district," or "residence district" as defined by the city ordinaces. In so far as the restrictions imposed upon the type of building within the district by the fire ordinances, the building proposed to be constructed may be legally constructed in any part of the district.

From what has been said it will be seen that the validity or nonvalidity of the ordinance depends upon its detailed terms and the specific application. General reference has been made to the ordinances. It is necessary to make an examination of the provisions of the ordinances in a more detailed way. From the reference to the sections quoted supra, it will be observed that there is no prohibition contained in sections 90 and 91, as amended, against conducting, in the residence district, a service station.

"Any person * * * wishing to conduct in the residence district * * * a service station * * * on the corner of a block must present to the building inspector the written consent of 60 per cent of all the frontage extending 400 feet from and along both sides of each street intersecting at said corner, also the full consent of the frontage 75 feet immediately adjoining on either side before permit will be issued."

### Section 91 provides that any person

"desiring to conduct any business * * * at any point other than at the corner" in the residence district "shall present the building inspector, with the written consent of 60 per cent of the frontage extending to the adjoining corner of the block, and on both sides of the street, also the full consent of the 75 feet immediately adjoining on either side before permit will be issued."

It is to be observed that no question is in issue herein other than the refusal of the building inspector to issue a permit. The only reason assigned therefor, and under the ordinance the only one that need be assigned, is the failure of the applicant to present with the application the written consent of 60 per cent of the 400 foot and full consent of the specified 75-foot frontages. The inspector's duty under the ordinance is purely ministerial. Such being the limitations of the question, the evidence as to uses, type of buildings, surrounding property, or uses to which the same is put, the traffic, or type thereof, the alleged estoppel, all become immaterial. It is clear from the provisions of the ordinance that there are no prohibitions as to operation, location, or manner of conducting any business thus specified and referred to in the ordinance; in fact, by implication, such business is permitted with the sole limitation and condition of obtaining the consent provided for by the ordinance. Put otherwise, the right of an owner of corner property to devote his land to any of the specified legitimate uses referred to in the ordinance is made dependent upon procuring written consent of adjoining owners of property. No question of safety, prosperity, morals, peace, comfort, good order, or convenience, or hearing upon any of such matters, is suggested. Abutting or adjoining and neighbor-

hood property owners may consent or refuse consent upon any ground or reason that may suggest itself, or for no reason at all, in so far as the provisions of the ordinances are concerned.

The following language is strikingly appropriate in this case:

"There is no legislative determination that the proposed building and use would be inconsistent with public health, safety, morals or general welfare. The enactment itself plainly implies the contrary. The grant of permission for such building and use, although purporting to be subject to such consents," shows the contrary. "The section purports to give the owners of less than one-half the land within 400 feet of the proposed building authority—uncontrolled by any standard or rule prescribed by legislative action—to prevent the trustee from using its land for the proposed home. * * * They are not bound by any official duty, but are free to withhold consent for selfish reasons or arbitrarily and may subject the trustee [applicant] to their will or caprice. *Yick Wo* v. *Hopkins,* 118 U. S. 356, 366, 368, 6 S. Ct. 1064, 30 L. Ed. 220. The delegation of power so attempted is repugnant to the due process clause of the Fourteenth Amendment." *State of Washington ex rel. Seattle Title Trust Co.* v. *Roberge,* 278 U. S. 116, 49 S. Ct. 50, 52, 73 L. Ed. 210.

"Under the Constitution, arbitrary power cannot be conferred upon the city council in the exercise of the police power or any other power it possesses. A gasoline filling station, properly constructed and properly operated, is not per se a nuisance. The city council may by reasonable ordinances establish zoning districts or define how gas filling stations may be constructed and how operated. But arbitrary power to allow a gas filling station on one man's property and disallow it to another, without any definite rule by which the city council is to be governed, cannot be conferred, for this would be to give it power to deny equal rights to all the citizens." *Slaughter* v. *Post,* 214 Ky. 175, 282 S. W. 1091, 1092.

Is it any less arbitrary, unreasonable, or discriminatory for a board of city commissioners to confer upon the owners of a specified foot frontage arbitrary power to allow a gas filling station on one man's property and, by refusal of consent, disallow it to another, than for a Legislature to confer a like power upon a city commission without a definite rule by which such action should be

governed? We observe none, and, further, find no such power conferred by statute in this state. It may be noted, however, that, when a comprehensive plan, with such regulations as shall be reasonable as to the character of the district, and appropriate to the use of the land throughout a city, has been established under the general zoning power:

"Such regulations, restrictions and boundaries may from time to time be amended, supplemented, changed, modified or repealed. In case, however, of a protest against such change signed by the owners of twenty per cent or more either of the area of the lots included in such proposed change, or of those immediately adjacent in the rear thereof extending 100 feet therefrom, or those directly opposite thereto, extending 100 feet from the street frontage of such opposite lots, such amendment shall not become effective except by the favorable vote of three-fourths of all the members of the legislative body. * * * The provisions of the previous section relative to public hearings and official notice shall apply equally to all changes or amendments." Section 15-8-93, proposed Rev. Stats. 1933; Laws Utah 1925, c. 119, § 5, p. 240.

Such situation is in no particular analogous to the one before us. A valid ordinance in pursuance of legislative grant of power, prohibiting the establishment or regulating the location of business within certain districts, and then granting to the protected areas the right to consent to a variance, is so fundamentally different that to be stated is to be recognized.

The cases relating to ordinances, involving the question of property owners' consent, are not numerous, but by the weight of authority such ordinances are held to be invalid as invading the due process of law clause of either state or Federal Constiution. Where such ordinances have been sustained, it is usually upon one of three grounds: (a) That the business, structure, or use is or tends to create a nuisance; or (b) there has been, in pursance of a comprehensive zoning or city planning scheme, established a restricted use or absolute prohibition, conforming to the general plan; or (c) general and uniform restrictions have been imposed for the health, comfort, convenience, or general welfare.

The doctrine of the following cases is illustrative. The syllabus reflects the holding in the case:

A municipal corporation has no authority inherently, or under the general welfare clause of its charter, to require owners of property on residence streets to secure the consent of a majority of the neighboring property owners before erecting a business block thereon. *Willison* v. *Cooke,* 54 Colo. 320, 130 P. 828, 44 L. R. A. (N. S.) 1030.

Prohibiting, under penalty, the construction of any business house within what the ordiance denominates a residence district of the city, except with the consent of three-fourths of the property owners of the district, and on the building inspector's permit, deprives the owner of his property without due process of law. *Spann* v. *City of Dallas,* 111 Tex. 350, 235 S. W. 513, 19 A. L. R. 1387.

A number of cases are then collected. The case of *Cusack Co.* v. *City of Chicago,* 242 U. S. 526, 37 S. Ct. 190, 191, 61 L. Ed. 472, L. R. A. 1918A, 136, Ann. Cas. 1917C, 594, is illustrative of the type where the prohibition has been laid, and may then be waived by frontage owners. The court there says:

"The plaintiff in error cannot be injured, but obviously may be benefited, by this provision, for without it the prohibition of the erection of such billboards in such residence sections is absolute."

"An ordinance requiring the consent of owners of property within 200 feet of a proposed stable for more than six horses as a prerequisite to the issuance of a permit is unreasonable and void as vesting in private individuals the arbitrary power to determine whether the owner of real property may use it in pursuit of a lawful occupation." *Coon* v. *Board of Public Works,* 7 Cal. App. 760, 95 P. 913; Ex parte Sing Lee, 96 Cal. 354, 31 P. 245, 24 L. R. A. 195, 31 Am. St. Rep. 218.

Our search has not revealed an ordinance quite so drastic in its provisions as the one here under examination. The owner of a corner lot must, before the building premit will issue, present to the building inspector "the written consent of 60 per cent of all frontage extending 400 feet from and along both sides of each street intersecting at said corner."

The total frontage thus to be canvassed amounts to 3,200 feet. Of this 60 per cent or 1,920 feet of frontage, must be secured. An owner may have thus far succeeded. He still faces another hurdle. He must have "the full consent of the frontage 75 feet immediately adjoining on either side before a permit will be issued." There would be no difficulty in supposing a case or actually finding a situation where one, two, or a very few feet of frontage would possess the absolute, unrestrained, and unrestricted power under the ordinance to prevent the use of a corner lot for any of the purposes specified in the ordinance, though the whole neighborhood except one objector might consent. This illustration shows how arbitrary, unreasonable, and discriminatory such power could be exercised were the principle once conceded that such power could be vested in abutting or adjacent frontage owners.

Under the Constitution, arbitrary power cannot be conferred upon abutting or adjacent property owners as to the exercise of the right of another property owner to make any lawful use of his property. A gasoline filling or service station properly constructed and properly operated is not a nuisance per se. A board of city commissioners has ample power under the statutes to pass reasonable ordinances providing for zoning by dividing the municipality into districts of such shape and area as may be deemed best suited to regulate and restrict the erection, construction, reconstruction, repair, or use of buildings or structures, or the use of land. All such ordinances must provide such regulations as shall be uniform for each class or kind of buildings througout each district, but the regulations in one district may differ from those in other districts. Such regulations must be made in accordance with a comprehensive plan. But arbitrary power to allow a gas filling station or service station upon one's own property only upon the consent of adjoining or abutting property or neighborhood frontage may not be conferred by the city commission, as this would be to give to one property owner control over the use to

which another property owner may put his property, and would deny equal rights to all citizens.

The trial court was therefore in error in holding the ordinance valid. The writ should have issued by the trial court. The judgment of the trial court is reversed, and the case remanded, with directions to proceed in accordance with the views herein stated. Appellant to recover costs.

STRAUP, C. J., and ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.