## UNION TRUST CO. v. SIMMONS.

No. 7349.   Decided November 3, 1949.   (211 P. 2d 196.)

See 16 C. J. S., Constitutional Law, sec. 137. Interested parties in proposed business, delegation of power by, requiring consent of, see note, 119 A. L. R. 1462. See, also, 11 Am. Jur. 931.

*Peter W. Billings,* Salt Lake City, *Fabian, Clendenin, Moffat & Mabey,* Salt Lake City, for plaintiff.

*Howell, Stine & Olmstead,* Ogden, *Ray, Quinney & Nebeker,* Salt Lake City, amici curiae.

*Clinton D. Vernon,* Atty. Gen., *Allen B. Sorensen,* Ass't Attorney General, State Capitol, Salt Lake City, for defendant.

PRATT, Chief Justice.

This matter comes before the court in the form of a petition for an alternative writ of mandamus to compel respondent to act upon the application of the Union Trust Company to establish a branch bank in Ogden, Utah, or to show cause why he should not do so.

Briefly stated the facts are these:

The petitioner filed with the respondent Bank Commissioner a written application to establish a branch bank in Ogden, Utah, and paid the required filing fee. Thereafter, the application and filing fee were returned to the petitioner by the bank commissioner, together with a letter indicating that by reason of Section 7-3-6, U. C. A. 1943, he could not consider their application until they had filed with him the written consent of the existing banks in Ogden. The petitioner indicates that the existing banks, two in number, refuse to consent to the establishment of an additional branch bank. Petitioner contends among other things that the proviso providing for consent amounts to an unconstitutional delegation of legislative powers to the existing banks.

The provision in controversy is that part of Section 7-3-6, U. C. A. 1943, which provides as follows:

"No branch bank shall be established in any city, town or village in which is located a bank or banks, state or national, regularly transacting a customary banking business, unless the bank seeking to establish such branch shall take over an existing bank *or obtain the consent of all banks therein located,* except that in cities of the first class, branches may be established without such consent; * * *." (Italics added.)

The particular phrase under attack by petitioner is the phrase italicized above. The letter from the bank commissioner indicated that it was on this authority that he refused to consider the application.

The two existing banks in Ogden, Utah, were authorized to file briefs as amici curiae, and have done so.

It is argued extensively in the brief for the respondent, and in the brief of amici curiae, that the business of banking is affected with a public interest, and therefore, it can be regulated or forbidden. Petitioner concedes the public interest at all times, and concedes the right of the Legislature to prohibit branch banking within the state, but contends that where the Legislature authorizes branch banking, it cannot delegate to competitor banks the determination of whether branch banks may be located in other than cities of the first class. Their position essentially is that the fact that a business is affected with a public interest does not lessen the requirement that the legislature retain its legislative functions, and that any delegation of fact finding, be only to administrative officers under proper rules to guide and direct them, and not leave the operation of the law to the determination of competitors whose adverse personal interests are likely to color their consideration of the matter.

In this respect they maintain that the situation is substantially the same as that presented to this court by the case of *Revne* v. *Trade Commission,* 113 Utah 155, 192 P. 2d 563, 3 A. L. R. 2d 169; wherein an act providing for price and hour fixing by 70% of the barbers was held unconstitutional as an improper delegation of legislative powers.

Petitioner also likens the case to that of *Smith* v. *Barrett,* 81 Utah 522, 20 P. 2d 864; which case involved an ordinance requiring consent of 60% of the property owners within 400 feet in each direction, and of all property owners within 75 feet on either side, before a service station could be erected on any corner lot in the city of Logan, Utah. This court held the ordinance unconstitutional. Respondent distinguishes this latter case by reason of the fact that it involved the impairment of property rights of the landowner. It is not necessary however to pass upon this matter, under the view we take of this case.

The question appears to resolve itself into one of whether the fact that a business is affected with a public interest is a sufficient ground to sustain the present statute as it now stands. Some effort is made by amici curiae to liken the status of banks to that of state agencies; which effort is highly unrealistic, when pursued to its logical results.

We briefly review the statute in question in addition to the part heretofore quoted. It embodies a requirement that business of every bank is to be conducted only at its banking house and that branch banks may be established with the consent of the bank commissioner and approval of the governor provided certain conditions as to capital are met. Then comes the quoted provision as to ways in which branch banks may be established, followed by this quotation as the latter part of the same paragraph:

"* * *; and, provided further, that whenever application is made for the establishment of any branch, the commissioner shall give notice thereof by publication in a newspaper of general circulation in the city or town in which such branch is to be established and shall hold a public hearing at a time and place within such city or town, in such notice specified, at which time any citizen may appear in support of or opposition to such application. No unit bank hereafter organized and operating at a point where there are other operating banks, state or national, shall be permitted to be acquired by another bank for the purpose of establishing a branch until such bank shall have been in operation as such for a period of five years."

The statute then provides for filing of the application and fee and examination of branch banks; defines what is meant by "branch"; and concludes as follows:

"Any bank desiring to establish one or more branches or offices shall file a written application therefor in such form and containing such information as the bank commissioner may require. No bank shall be permitted to establish any branch or office until it shall first have been shown to the satisfaction of the bank commissioner and the governor that the public convenience and advantage will be subserved and promoted by the establishment of such branch or office and the bank commissioner may by order permitting the establishment of such branch or office designate and limit the character of work and service which may therein be performed.

"Any corporation or officer thereof violating any of the provisions of this section is guilty of a misdemeanor."

It is contended that had the statute provided for branch banks subject to the requirement of consent by the state bank commissioner and approval of the governor, if demonstrated to their satisfaction that the public convenience and advantage would be subserved and promoted by the establishment of a branch bank, that the law would have been proper. Under such a law the legislature would be formulating the law and delegating to the administrative officer the application of it under proper rules to guide him as to when he should approve, or when he should not approve. The law as it applies to cities of the first class would, according to petitioner, have been a proper law had it applied to all cities and towns.

This serves to point up the objectionable portion of the statute. In cities other than those of the first class, the officers to whom the legislature delegated the authority to approve branch banks according to "public convenience and advantage" are powerless to act to make that determination unless the existing banks will consent that the bank commissioner make such determination, and this consent may be arbitrarily withheld. In short, the bank commissioner is powerless under the statute with relation to cities other than those of the first class unless the potential competitor banks give their consent, regardless of the question of public convenience and advantage. Thus, the operation of the law is not contingent primarily upon the determination of public convenience and advantage by proper administrative authority, but is primarily contingent upon the whim and caprice of competitors whose interests obviously are opposed to additional competition. Concretely illustrated by an extreme case, a city of 89,000 people with but one bank would be absolutely precluded from acquiring another bank under the branch bank law, even though there existed a pressing public need therefor, and even though the bank commissioner would, if the matter could reach him, decide that the

public convenience and advantage would best be subserved and promoted by authorizing such branch bank.

The following excerpt from the case of *Revne* v. *Trade Commission,* supra, at page 567, of 192 Pacific Reporter appears to be applicable:

"We recognize, of course, that the legislature may properly delegate to some administrative body the duty of ascertaining the facts upon which the provisions of a law are to function, and also, that one of the methods of initiating activity on the part of that administrative body may be by petition of the citizens concerned. Such procedure is not in and of itself defective as an improper delegation of legislative authority. The question of an improper delegation of legislative authority lies embedded in the extent of the power granted to the administrative body. If the interests of the public must give way to those of a particular class, the effect is simply to permit that class to impose its will upon the administrative body and the public, be the results beneficial to the public or not. * * *"

"* * * The law was passed to protect the public health and safety by authorizing the establishment of certain prices and hours in the public interest, and yet there is no way, on behalf of the public, to initiate such security if the specified majority of the barbers refuse, for selfish reasons, to act. No other group of citizens may initiate the schedules. The board is not given power to act for the public upon its own initiative. Thus the public interest is subjected to the interests of a group who may be very antagonistic to that public interest. * * *"

Under the facts of this case, and the holding in the Revne case, we conclude that the provision relating to consent of existing banks is unconstitutional. This does not however mean that the writ of mandate should be made permanent. Other factors enter in, which defeat petitioner's right to the writ.

The part of the statute first quoted above, establishes two methods of establishing a branch bank, compliance with either of which will make it possible for the bank commissioner to determine the issue of convenience and advantage in other than cities of the first class. Broken down, they are:

(1)   Take over an existing bank, or

(2)  Secure the consent of existing banks.

The second method is unconstitutional for the reasons heretofore outlined.

The contention of the petitioner is that structurally and as to subject matter the two conditions form integral parts of a whole, and cannot be separated, and therefore, if the second is unconstitutional, then the first falls with it.

Severability or separability where part of a statute is unconstitutional, is primarily a matter of legislative intent. The test fundamentally is whether the legislature would have passed the statute without the objectionable part, and whether or not the parts are so dependent upon each other that the court should conclude the intention was that the statute be effective only in its entirety. *North Tintic Mining Co.* v. *Crockett,* 75 Utah 259, 284 P. 328. Frequently the courts are aided in the determination of legislative intent by the inclusion within a statute of a "saving clause." No saving clause is present in the present enactment however.

The problem is two-fold in the present case, in that both the parties and amici curiae seemingly agree that the statute is separable, but differ as to the place of separation.

Respondent and amici curiae agree that if the consent provision is unconstitutional, it is separable, and there remains only one method of establishing branch banks in cities other than those of the first class, and that is by taking over an existing bank and getting approval of the bank commissioner. Petitioner, as indicated, contends the point of separation lies between the specific provisions on one side and the general approval and consent provision as to the bank commissioner and governor, predicated on public convenience and advantage, on the other.

The two methods are contained within a single sentence in the statute:

"No branch bank shall be established in any city, town or village in which is located a bank or banks, state or national, regularly transacting a customary banking business, unless the bank seeking to establish such branch shall take over an existing bank or obtain the consent of all banks therein located * * *."

There is nothing otherwise about the two methods to suggest integration. The two methods are mutually exclusive, in that they are predicated upon different concepts, and cover different situations. Nowhere do the two methods have common provisions or requirements which would require that both fall in the event one was unconstitutional. Neither is dependent upon the other for its force and vitality.

There is nothing about either of the two methods then which indicates any intention on the part of the legislature that both should fall. To the contrary, the independence of the two methods, taken with the other factors heretofore discussed, and the history of branch banking legislation make it apparent that the statute is severable as to the two methods, and we so hold. There remains then one method whereby branch banks may be established, and that by taking over an existing bank. Petitioner has not complied with any of the requirements for establishment of a branch bank under this method; therefore, the petition for a writ of mandamus must be and is denied.

WOLFE, LATIMER, and McDONOUGH, JJ., concur.

WADE, Justice (concurring).

I concur. But somehow, in declaring this provision unconstitutional, we seem to get the opposite result from what we should. The effect of removing this questioned provision from the statute is to limit the conditions under which a branch bank may be established rather than to enlarge them which is the opposite from what is expected. Such being the case, the petitioner is not favorably affected by

the holding and therefore probably is not in a position to question the constitutionality of this provision.

The statute, section 7-3-6, U. C. A. 1943. provides that:

"No branch bank shall be established in any city, town or village in which is located a bank or banks, state or national, regularly transacting a customary banking business, unless the bank seeking to establish such branch shall take over an existing bank or obtain the consent of all banks therein located, *except that in cities of the first class, branches may be established without such consent;* * * *." (Italics added.)

By the above emphasized provision the legislature intended to allow the establishment of a branch bank in cities of the first class not only as expressly therein provided, without obtaining the consent of all banks therein located, but also without taking over an existing bank. Otherwise, that provision would not alter the meaning of that section at all, for under the provision which applies to cities, towns and villages other than cities of the first class, without the aid of such an exception a branch bank may be established without the consent of the local banks by taking over an existing bank. But the reasoning used in arriving at such legislative intention is lacking where we declare the questioned provision unconstitutional. In dealing with cities other than cities of the first class, there is nothing in this section to indicate how the legislature intended the statute to be construed in case this provision was held to be unconstitutional. Under these circumstances we must construe the statute the same as though the unconstitutional provision had never been inserted. If we delete this provision then it is clear and unambiguous that before a branch bank can be established in the cities in question an existing bank must be taken over. I therefore concur with the prevailing opinion.