## STATE ex rel. SHIELDS v. BARKER

No. 3106.   Decided August 8, 1917.   (167 Pac. 262.)

1. STATUTES—SURPLUSAGE—DISREGARD. The preposition "in," in Laws 1917, c. 107, providing "that in all cities of the state having a population of more than 7,500 and less than 50,000 inhabitants may create by ordinance a court," is mere surplusage, and will be disregarded.   (Page 191.)

2. CONSTITUTIONAL LAW—COURTS—LEGISLATIVE POWER—DELEGATION OF POWER TO CREATE COURTS. Laws 1917, c. 107, providing "that in all cities of the state having a population of more than 7,500 and less than 50,000 inhabitants may create by ordinance a court to be called," etc., is in violation of Const. art. 8, section 1, providing that "the judicial power of the state shall be vested in the Senate sitting as a court of impeachment, in a Supreme Court, in district courts, in justices of the peace, and such other courts inferior to the Supreme Court as may be established by law," in that it delegates the power to create the municipal courts mentioned to the city authorities.   (Page 191.)

3. CONSTITUTIONAL LAW—STATUTES—CONSTRUCTION IN FAVOR OF VALIDITY—DUAL MEANING. In case a change in any act admits of a dual meaning, that meaning must be adopted which upholds the act.   (Page 193.)

4. CONSTITUTIONAL LAW—PRESUMPTION OF CONSTITUTIONALITY. Courts cannot declare an act invalid unless it clearly, palpably, and beyond a reasonable doubt contravenes some constitutional provisions.   (Page 193.)

5. STATUTES—INVALIDITY IN PART. Where different sections of the Compiled Laws have been amended so as to make the amendatory act conform to the new condition contemplated, and the amendment is invalid as to one section, it must also be held invalid as to all.   (Page 195.)

6. STATUTES—REPEAL—UNCONSTITUTIONAL STATUTE—EFFECT. Where an amendatory act repeals a former law upon the same subject and the amendatory act is held invalid on constitutional grounds, the amendatory act is impotent to repeal the whole law.   (Page 195.)

Original quo warranto proceedings by the State on the relation of Dan B. Shields, against George S. Barker.

Petition discharged without costs.

*Stuart P. Dobbs* and *A. G. Horn* for plaintiff.

*E. T. Hulaniski* and *John G. Willis* for defendant.

FRICK, C. J.

Hon. Dan B. Shields, as Attorney General of this state, obtained leave of this court to bring this action in quo warranto as an original proceeding. The action is instituted against the defendant George S. Barker as judge of the municipal court of Ogden City to determine his right to discharge the duties as such judge and to test the validity of chapter 107, Laws Utah 1917, p. 377.

The defendant is the duly elected judge of the municipal court of Ogden City, under the provisions of Comp. Laws 1907, section 686x37. The Legislature, at the 1917 session, however, amended section 686x37, supra, together with other sections which we shall refer to later in this opinion. It is contended on the part of the defendant that the amendatory act of 1917 is unconstitutional and void, and that he is lawfully acting under the old law. Upon the other hand, it is insisted that if said act is not void, then the old law under which the defendant was elected and is acting has been repealed, and hence he is unlawfully holding and exercising the functions of a public office.

The defendant entered a voluntary appearance, and, while admitting all the allegations of the complaint, he, nevertheless, insists that chapter 107, Laws Utah 1917, is unconstitutional and void, and for that reason the old law is still in full force and effect. The part of section 686x37 as originally enacted, and which is material here reads as follows:

"In all cities of this state *having a population of more than 15,000 and less than 40,000 inhabitants, there is hereby created* a court to be called 'the Municipal Court for ——— City, Utah,' " (Italics ours.)

The section then prescribes the qualifications of the judge, when and how elected, and the term of office, etc. That section was amended by chapter 107 aforesaid to read as follows:

"That *in* all cities of the state *having a population of more than seventy-five hundred and less than fifty thousand inhabitants may create by ordinance a court* to be called 'the Municipal Court for ——— City, Utah.' " (Italics ours.)

It must be apparent to all that the preposition "in" in the foregoing quotation is mere surplusage, and it therefore will receive no further consideration.

The same provisions that are contained in the original section are then re-enacted in the amendatory act, except that the first election under the new act is to be held in November, 1917. Our Constitution, article 8, section 1, reads as follows:

"The judicial power of the state shall be vested in the Senate sitting as a court of impeachment, in a Supreme Court, in district courts, in justices of the peace, and such other courts inferior to the Supreme Court as may be established by law."

The principal questions that arise in this controversy are: Does the amendatory act delegate the power to create the municipal courts mentioned therein to the city authorities of the cities enumerated in the act; and, if so, may that power be delegated by the Legislature? When those two propositions are solved, all the other questions are merely incidental.

What is meant by the expression "as may be established by law" in the constitutional provision we have quoted? To our minds the expression admits of but one meaning, and that is, if, in the judgment of the Legislature, it becomes necessary to establish courts in addition to those enumerated in the constitutional provision, then the Legislature may, by law duly passed, create such other courts inferior to the Supreme Court as in the judgment of that body may be necessary. To be "established by law" means just what it says, namely, by a law duly passed by the lawmaking power of this state. The Supreme Court of Michigan in *Fennell* v. *Common Council*, etc. 36 Mich., in referring to what is meant in the Michigan Constitution by the term "law," at page 190, says:

"We have heretofore on more than one occasion intimated that the penal laws referred to in the state Constitution were the laws of the state. The term 'law,' as defined by the elementary writers, emanates from the sovereignty and not from its creatures. The legislative power of the state is vested in the state Legislature, and their enactments are the only instruments that can in any proper sense be called laws."

The question in that case was whether certain ordinances ought to be considered laws within the purview of the Constitution. The intention of the framers of the constitutional provision we have quoted from our Constitution, in using the term "law," is, however, much clearer and stronger than was the case in the decision just quoted from. Here the framers of the Constitution, who represented the sovereign people, were conferring an express power to create courts, which is the exclusive prerogative of the sovereign. Upon whom, therefore, did they confer the power to create such courts? Manifestly, upon those who were chosen by and who represent the people, namely, the members of the Legislature when duly assembled to enact laws. How were such courts to be created? Most clearly by the only method known to legislative bodies, namely, by the passage of a law in due and proper form. "Inferior courts," therefore, if created at all, must be created by the Legislature by the adoption of a law to that effect.

We need not pause to point out that the powers delegated to the Legislature may not be redelegated by that body, and that in no event may a law be passed except by the Legislature, unless the Constitution provides to the contrary. In this instance the Constitution requires the regular method.

While counsel on both sides have frankly conceded that the amendatory act is probably unconstitutional, yet in view that courts are very reluctant to declare laws unconstitutional, they have suggested that the amendatory act may perhaps be construed so that the courts mentioned in the act are in fact established by a law passed by the Legislature, and that the act merely authorizes the city authorities to adopt the act or to refuse to do so, as they may elect. Several cases are cited in which, under the peculiar wording of the acts there in question, such acts were so construed. Such was the case in *State ex. rel Hagestad* v. *Sullivan,* 67 Minn. 379, 69 N. W. 1094; *Lytle* v. *May,* 49 Iowa, 224, and in *Page* v. *Millerton,* 114 Iowa, 378, 86 N. W. 440. We could subserve no good purpose in pausing here to set forth the acts that were passed on in those cases. It is sufficient to call attention to the fact that we have a case here where the change of language between the

original and amendatory acts is radical and irreconcilable. The change is not one where there merely is a change of expression while the original sense is retained. If the Legislature had intended to create the courts in the new act, there would have been no necessity whatever of changing the language, in that regard, of the original act. That change aptly and clearly expressed the legislative intention. The only purpose of changing the language, therefore, was to bring about a change in the agency creating the courts. Instead of the Legislature creating the courts, as was done in the original act, that power was conferred on the cities in the amendatory act.

We are not unmindful of the fact that it is our duty to construe and apply all legislative acts so as to make them harmonious with the Constitution, if such a thing is possible, and in case a change in any act admits of a dual meaning, we must adopt that meaning which upholds the act.

Nor are we permitted to declare an act invalid unless it is clearly, palpably, and beyond a reasonable doubt in contravention of some constitutional provision. To that effect are all of the cases decided by this court. The last expression upon the subject is found in the case of *Rio Grande Lumber Co.* v. *Darke,* 50 Utah, 114, 167 Pac. 241, decided at this term. In order to hold the amendatory act creating the courts therein mentioned valid, we would not only have to ignore and go counter to every known rule or canon of construction, but we would also be required to disregard the manifest intention of the Legislature as expressed in the amendatory act. Let us pause a moment to examine the controlling words of the amendatory act. They are:

"That all cities of the state having a population of more than seventy-five hundred and less than fifty thousand inhabitants may create by ordinance a court," etc.

The controlling words of the original act before it was amended were:

"In all cities of this state having a population of more than 15,000 and less than 40,000 inhabitants there is hereby created a court," etc.

In amending the original act the Legislature therefore intended to accomplish two purposes: (1) To enlarge the class and thereby increase the number of cities in which municipal courts should be established; and (2) instead of creating such courts by legislative edict to authorize their creation by the several cities coming within the class named in the act. No reasonable person would contend that under any rule of construction it would be permissible to construe the act to the effect that the Legislature did not intend to change the number of inhabitants and thereby to enlarge the class and to increase the number of cities to which the amendatory act would apply as compared with what was the effect in those respects in the original act. It would, however, be just as reasonable to hold that as it would be to hold that the Legislature intended to create the courts rather than to delegate the power to the several cities. That the Legislature intended to accomplish the latter purpose is just as clear from the language used as it is that it intended to accomplish the former. It would be quite as reasonable to hold that the Legislature did not intend to enlarge the class of cities to which the amendatory act should apply as it would be to hold that it did not intend that the cities should create the courts mentioned in the act. To hold either would do violence to all the language that is used in that portion of the act we have quoted above. It is too clear for controversy, therefore, that in passing the amendatory act the Legislature attempted to delegate a power which, by the Constitution, is expressly conferred on that body; and in doing that the Legislature transcended the constitutional provision we have quoted.

It is not necessary to pursue the subject farther, except to say that in this case the whole court is not only satisfied beyond a reasonable doubt, but all of us are satisfied beyond all possible doubt, that in passing the amendatory act the Legislature intended to accomplish what the Constitution does not permit, and for that reason the act is unconstitutional, and therefore void and of no effect.

As before indicated, the Legislature in the same act also amended Comp. Laws 1907, section 686x43, 686x45, and

686x46, all of which were parts of the original act. The question, therefore, arises, Are those amendments so connected with the amendatory act which we have just held invalid that they, too, must fall as part of the act? We think it needs no argument to show that the latter amendments were adopted to make the amendatory act as a whole conform to the new conditions contemplated by the amendment of section 686x37, and for that reason the latter three sections as amended must also be held bad.

The amendatory act, however, also repeals "all acts and parts of acts in conflict herewith," and hence it is mooted whether the old law as it existed before the amendatory act was passed is not repealed. In *Board of Education* v. *Hunter*, 48 Utah, 373, 159 Pac. 1019, we directly held that where an amendatory act repeals a former law upon the same subject and the amendatory act is held invalid on constitutional grounds, the amendatory act is impotent to repeal the old law, and that the old law remains in full force and effect as though the amendatory act had not been passed. The law with respect to the municipal court in Ogden City is therefore in force precisely as it was before the amendatory act was passed.

In conclusion we desire to add that we would have saved the act in question had it been possible for us to do so without transcending the Constitution, since we are of the opinion that the cities included within the amendatory act are entitled to municipal courts. The Legislature should, however, create the courts and define their powers and jurisdiction, and not attempt to confer the power to create them on some other agency. The Legislature may easily provide courts for all the cities included in the amendatory act by merely passing an act by which the class of cities in which such courts are created is enlarged as in the amendatory act.

From what has been said it follows that the defendant is not unlawfully exercising the functions of the municipal judge of Ogden City, but that he, in all respects, is discharging the duties imposed on him as such judge according to law. It is

therefore ordered that the petition of the Attorney General be, and the same is hereby, dismissed, without costs.

McCARTY, CORFMAN, THURMAN, and GIDEON, JJ., concur.