In the Matter of Harold Beck KESLER,
Bankrupt.

No. B–143–59.

United States District Court
D. Utah,
Central Division.

Aug. 29, 1960.

E. J. Skeen, of Skeen & Skeen, Salt
Lake City, Utah, for bankrupt.

Gordon A. Madsen, Asst. Atty. Gen. (Walter L. Budge, Atty. Gen., with him on the brief), for respondent.

Before PICKETT, Circuit Judge, and CHRISTENSON and CHILSON, District Judges.

CHRISTENSON, District Judge.

The bankrupt was duly discharged from liability on a properly scheduled judgment for personal injuries sustained by the creditor as a result of the bankrupt's adjudicated negligence in the operation of an automobile. Notwithstanding such discharge, his motor vehicle registration and operator's license are under suspension pursuant to the terms of the Utah Motor Vehicle Safety Responsibility Act[1] for non-payment of the judgment. Contending that provisions of the State law[2] authorizing such suspension are unconstitutional[3] and void because they conflict with Section 17 of the Bankruptcy Act,[4] the bankrupt, as petitioner, has brought this three judge court proceeding[5] in an attempt to compel restoration by state authority of his driving privileges.

On June 21, 1957, Judgments were entered in a State Court for a total of $6,-

1. Chapter 12, Title 41, Utah Code Annotated, 1953 (41–12–1 et seq., UCA 1953).

2. The Utah Safety Responsibility Act contains inter alia, the following provisions:

§ 13 "Whenever any person fails within 60 days to satisfy any judgment, upon the written request of the judgment creditor or his attorney it shall be the duty of the clerk of the court, or of the judge of a court which has no clerk, in which any such judgment is rendered within this state, to forward to the commission immediately after the expiration of said 60 days, a certified copy of such judgment.

"If the judgment debtor named in any certified copy of a judgment reported to the commission is a nonresident, the commission shall transmit a certified copy of the judgment to the official in charge of the issuance of licenses and registration certificates of the state of which the judgment debtor is a resident.

§ 14 "(a) The commission, upon the receipt of the certified copy of a judgment, shall forthwith suspend the license and registration and any nonresident's operating privilege of any person against whom such judgment was rendered, except as hereinafter otherwise provided in this section and in section 41–12–17.

"(b) If the judgment creditor consents in writing, in such form as the commission may prescribe, that the judgment debtor be allowed license and registration or nonresident's operating privilege, the same may be allowed by the commission, in its descretion, for 6 months from the date of such consent and thereafter until such consent is revoked in writing notwithstanding default in the payment of such judgment, or of any installments thereof prescribed in section 41–12–17, provided the judgment debtor furnishes proof of financial responsibility.

§ 15 "Such license, registration and nonresident's operating privilege shall remain so suspended and shall not be removed, nor shall any such license or registration be thereafter issued in the name of such person, including any such person not previously licensed, unless and until every such judgment is stayed, satisfied in full or to the extent hereinafter provided and until the said person gives proof of financial responsibility subject to the exemptions stated in sections 41–12–14 and 41–12–17.

"A discharge in bankruptcy following the rendering of any such judgment shall not relieve the judgment debtor from any of the requirements of this act."

3. Under the due process clause of the Fourteenth Amendment to the Constitution of the United States, and in view of Article I, Section 8, Clause 4, Ibid., authorizing the Congress to establish uniform Rules on the subject of Bankruptcies throughout the United States. "The national purpose to establish uniformity necessarily excludes state regulation. * * * States may not pass or enforce laws to interfere with or complement the bankruptcy act or to provide additional or auxiliary regulations." International Shoe Co. v. Pinkus, 278 U.S. 261, 49 S.Ct. 108, 110, 73 L.Ed. 318.

4. Section 17 of the Bankruptcy Act, 11 U.S.C.A. § 35, provides:

"(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except * * *." (exceptions not applicable).

5. Invoking the provisions of 28 U.S.C.A. § 2281.

523.04 against Kesler and in favor of the guardians ad litem of certain minors.[6] These constituted provable claims which were discharged in bankruptcy on December 31, 1959. In the meantime, the judgment creditors, acting pursuant to Section 41–12–13 (quoted in the margin) requested the Clerk of the State Court to forward to the Department of Public Safety of the State of Utah certified copies of the Judgment. Whereupon, in accordance with the State law, the Department of Public Safety suspended the petitioner's license to operate a motor vehicle in the State of Utah and suspended the registration of his motor vehicle. The operator of a one-man automobile repair business, he has been greatly handicapped in the making of a living by the action of the State.

He prays that the provisions of the law relied upon by the State be declared void, and that designated officers of the Department of Public Safety of the State of Utah be required to reinstate his suspended rights, or that he be granted other appropriate relief.

The respondent, Department of Public Safety (Financial Responsibility Division) of the State of Utah, conceding that this court has jurisdiction over the matters in issue and is empowered to determine the validity of the act as against respondent's attack, contends that it constitutes a valid exercise of the police power not in conflict with Section 17 of the Bankruptcy Act.

■ It must be recognized that automobile financial responsibility acts, which by now are common in the majority of states of the United States, have been rather consistently upheld against constitutional and other objections.[7] This has been on the theory that the State, in the exercise of its police power,

may reasonably regulate the use of its highways, with the objective, among others, of minimizing the hardship flowing from the financial irresponsibility of users involved in accidents. Berberian v. Lussier, R.I.1958, 139 A.2d 869; DeVries v. Alger, 1950, 329 Mich. 68, 44 N.W.2d 872.

In Reitz v. Mealey,[8] the United States Supreme Court declared that any appropriate means adopted by a State to insure competence and care on the part of its licensees and to protect others using its highways is consistent with due process of law. It determined that a New York statute providing for the suspension of an operator's license for three years if a judgment against him resulting from the negligent operation of a motor vehicle was not paid or discharged other than through bankruptcy, was valid and enforceable. In 1936 and 1939 certain amendments to the act so sustained had been adopted, which gave the creditor control over the restoration of a debtor's license and its continued force during the three year suspension period and made it the duty of the county clerk to certify a judgment only on written demand of the judgment creditor or his attorney. The Supreme Court, however, declined to pass upon the validity of these amendments, holding that the district court had properly thus abstained on the ground that under New York law a statute in itself constitutional would not be affected by an unconstitutional amendment. Petitioner says that the question avoided in Reitz v. Mealey is squarely presented here.

Petitioner's reliance is almost wholly upon Reitz v. Mealey; indeed, that decision necessarily must constitute the base and meridian of our survey of the applicable law since it represents the latest, in

6. Max L. Morley, guardian ad litem for Patricia Jo Morley and Janice Lee Morley, minors, and Alfred Leon, guardian ad litem for Elisa Ruth Leon, minor, v. Harold Beck Kesler, in The District Court of the Third Judicial District of the State of Utah in and for Salt Lake County.

7. Annotation Validity of Motor Vehicle Financial Responsibility Act, 35 A.L.R. 2d 1011.

8. 1941, 314 U.S. 33, 62 S.Ct. 24, 86 L.Ed. 21. See also the decision of the three judge court from which the appeal was taken. D.C.N.D.N.Y.1940, 34 F.Supp. 532.

fact the only, authoritative and pertinent case that has been called to our attention or that we have been able to find.[9] Reitz in effect lays down these propositions which we need not redebate with reference to cases like the one before us: (1) Without creditor controls, automobile financial responsibility laws such as Utah's would be both a legitimate exercise of the police power and consistent with the Bankruptcy Act; (2) If provisions of the act under attack are severable from its clearly valid provisions so that the court reasonably can say that the legislature intended the latter to stand despite the possible invalidity of the challenged provisions, and if under the unchallenged provisions the petitioner would be entitled to no relief, the court should not declare the act unconstitutional or invalid; and (3) If the facts do not invoke the operation of a challenged provision of the act, it being severable, the court should not pass upon its validity.

█ Despite some variation in expressions, we perceive no significant difference between the creditor controls of the Utah statute and of the New York amendments. Without these creditor controls the Utah statute clearly would be valid. Are they severable from the other provisions of the statute under which the petitioner's driving rights were suspended, in view of the separability clause set out in the Utah act? [10] This problem too should be decided in view of state law, as the Supreme Court in Reitz and in Meyer v. Wells Fargo & Co.,[11] indicated.

██ In Utah it is recognized that severability or separability, where part of a statute is unconstitutional, is a matter primarily of legislative intent.[12] The test, fundamentally, is whether the legislature would have passed the statute without the objectionable part, or whether the parts are so dependent upon each other that the court should conclude that the intent was that the statute be effective only in its entirety.[13] The courts may be aided in the determination of legislative intent by the inclusion within a statute of a saving clause, which will create a presumption of separability.[14] But this presumption is not controlling if it is recognizable that the legislature would not have enacted the remaining provisions alone, or that standing alone they would not provide for an operative whole.[15] In Reitz, supra, the Supreme Court was of the view on principles similar to those recognized in the Utah decisions [16] that the ques-

---

9. The State relies strongly upon DeVries v. Alger, supra, 44 N.W.2d 872. It must be observed, however, that the Michigan statute there involved (Act 203, 1933, Compiled Laws Michigan, 1948, Secs. 256.251 et seq.) does not contain creditor control provisions relating to the suspension of privileges (Sec. 256.253) although it does permit their restoration under specified conditions with the consent of the creditor (Sec. 256.254).

10. Section 41–12–40 of the act reads: "Separability clause—If any part or parts of this act shall be held unconstitutional, such unconstitutionality shall not affect the validity of the remaining parts of this act. The legislature hereby declares that it would have passed the remaining parts of this act if it had known that such part or parts hereof would be declared unconstitutional."

11. 223 U.S. 298, 32 S.Ct. 218, 56 L.Ed. 445.

12. State v. Ledkins, 1956, 5 Utah 2d 422, 303 P.2d 1099. Union Trust Co. v. Simmons, 1949, 116 Utah 422, 211 P.2d 190. Smith v. Carbon County, 1938, 95 Utah 340, 81 P.2d 370.

13. State v. Ledkins, supra, 1956, 5 Utah 2d 422, 303 P.2d 1099. Union Trust Co. v. Simmons, supra, 1949, 116 Utah 422, 211 P.2d 190. Thomas v. Daughters of Utah Pioneers, 1948, 114 Utah 108, 197 P.2d 477. North Tintic Mining Co. v. Crockett, 1929, 75 Utah 259, 284 P. 328. State ex rel. Shields v. Barker, 1917, 50 Utah 189, 167 P. 262.

14. Tygesen v. Magna Water Co., 1950, 119 Utah 274, 226 P.2d 127. Patterick v. Carbon Water Conservancy Dist., 1944, 106 Utah 55, 145 P.2d 503.

15. State v. Roberts, 1937, 92 Utah 204, 66 P.2d 892. State v. Barker, supra, 1917, 50 Utah 189, 167 P. 262.

16. See State v. Barker, supra, 1917, 50 Utah 189, 167 P. 262.

tioned provisions were separable from the original statute.

The prevailing opinion stated on this point [314 U.S. 33, 62 S.Ct. 28]:

"There is no evidence of intent that if the amendments could not stand the legislation as a whole should fail. On the contrary, the legislative history discloses a persistent purpose that such a scheme for the control of motor drivers should remain. Successive and frequent amendments have dealt with details but have left intact the major features of the legislation. In any case, we should accord great weight to the District Court's view of New York law. But an examination of the authorities convinces that in this case any contrary view is untenable."

With respect to the amendment giving the creditor control over the restoration of the operator's privileges prior to satisfaction of the judgment in full, we believe that we are bound by the Supreme Court's view that a justiciable question would arise only if the creditor were shown to have invoked the provision by consenting to the renewal.[17] How this question ever would be raised, with the creditor not likely to do so if he has consented to the restoration and the debtor not willing to, is not clear to us as a practical matter, but we must follow the higher court in thus straining to avoid the constitutional issue. At least we have looked at these restoration provisions as background on legislative intent in connection with the other provisions of the law that are open to question before us. These other provisions relate to the control of the creditor in bringing about the suspension in the first instance. Unlike the situation in Reitz, we do not believe that we can or should avoid the testing of the latter problem here.

The New York statute, disregarding the amendments, made it the duty of the county clerk to certify to the Commissioner of Motor Vehicles any judgment of the kind involved here which had become final and remained unsatisfied for fifteen days. The Supreme Court said:

"It is true that the bill alleges the judgment in this case was certified at the request of the plaintiff's attorney. But if the amendment is void because it confers a power on the creditor inconsistent with the effect of the debtor's discharge, and is eliminated from the statute for that reason, it still remains that under the old law the county clerk's duty to certify was mandatory, and this judgment would have been certified if he had performed his official duty."

The Utah statute, sec. 41–12–13 provides in language similar to that of the 1939 amendment in New York that whenever any person fails within 60 days to satisfy any judgment, "upon the written request of the judgment creditor or his attorney it shall be the duty of the clerk of the court * * * to forward to the commission immediately after the expiration of said 60 days a certified copy of such judgment." Section 41–12–14 says that, "The commission, upon the receipt of a certified copy of a judgment, shall forthwith suspend the license and registration * * *." The real difference, if the challenged creditor control is to be disregarded, is that under the original New York Act there was provision for the mandatory forwarding of the judgment and there would be no such provision in the Utah law if the creditor controls in Section 41–12–13 were disregarded.

The Utah statute does provide that "the Commission, upon the receipt of a certified copy of a judgment, shall forth-

---

17. It is stated (314 U.S. at page 39, 62 S. Ct. at page 28) on this point:
"Since the judgment in this case would or should have been certified prior to the amendment of 1939 and since the creditor has not sought to invoke the amendment of 1936 which gives him a control over the restoration of appellant's license and its continued force during the three year suspension period, we think the court was right in abstaining from deciding whether the amendments are annulled by § 17 of the bankruptcy act."

with suspend the license and registration * * *." It may be argued that this provision can stand alone to authorize the action of the Commission, notwithstanding how or upon whose action a certified copy may come into its possession. But this seems too haphazard a system upon which to justify the exercise of the police power, even in view of the separability clause. No provision is made in the Utah law for forwarding the judgment for action by the Commission except on motion of the creditor. The clerk has no duty to act in the absence of the creditor's request.[18] It seems inescapable under these circumstances that we view the provision for the forwarding by the creditor of a certified copy of the judgment and the provision for the suspension of the operator's privileges upon the Commissions receipt of such judgment as essential parts and parcels of the same system. To judicially excise the one from the other would leave the surviving part a detached and meaningless member bearing no reasonable relationship to the exercise of the police power.

Regarding the provision under attack as inseparable from the provisions authorizing action by the commission, we thus are confronted with the specific problem which the Supreme Court in Reitz found it unnecessary to decide: Does the fact that the judgment creditor must invoke the operation of the act by forwarding or causing to be forwarded a certified copy of the judgment, render the act unconstitutional or in contravention of section 17 of the Bankruptcy Act? We have concluded that this question must be answered in the negative, with the result that the bankrupt's petition should be denied.

We are not unmindful that four of the Justices of the Supreme Court as then constituted held a contrary view,[19] and that comments in the prevailing opinion indicated that there might be some merit in the argument now made by the petitioner.[20]

But the very basis of the prevailing opinion—that of abstention from deciding the point—commends that we refrain from reading anything into the decision inconsistent with the proposition that the lower court and the Supreme Court did not decide the point directly or indirectly.

We must accept the proposition which was directly decided in Reitz, that a system involving the mandatory forwarding by the clerk of unsatisfied judgments for action by the commission against the operating privileges of the judgment debtor is sustainable. On the latter point the Supreme Court said:

"Second. Prior to the amendment of 1936, the license could not be restored until three years had expired from its suspension unless the judgment were paid or discharged, except by a discharge in bankruptcy, and unless, also, the licensee furnished proof of his ability to respond in damages for any future accident.

18. Contrast the New York Statute, of which the Supreme Court observed (at page 38 of 314 U.S., at page 27 of 62 S. Ct.): "But if the amendment is void because it confers a power on the creditor inconsistent with the effect of the debtor's discharge, * * * it still remains that under the old law the county clerk's duty to certify was mandatory, and this judgment would have been certified if he had performed his official duty."

19. Summarized Mr. Justice Douglas in the dissenting opinion (at page 43 of 314 U.S., at page 30 of 62 S.Ct.): "In short, this power which New York has given the creditor is a powerful collection device which should not be allowed to survive bankruptcy."

20. At page 38 of 314 U.S., at page 27 of 62 S.Ct.: "A more serious question arises in connection with § 17 of the bankruptcy act. The discharge of the debtor is a defense available against a suit on the judgment and against execution process issued upon it. And there is force in the argument that § 94–b, as amended, in truth deprives the debtor of the immunity afforded by his discharge, leaves out of view the public policy of the State or makes that public policy subservient to the private interest of the creditor by affording him the opportunity to initiate, remove and revive the suspension of the license upon terms as to payments on account of his claim."

"If the statute went no further, we are clear that it would constitute a valid exercise of the state's police power not inconsistent with § 17 of the bankruptcy act. The penalty which § 94–b imposes for injury due to careless driving is not for the protection of the creditor merely but to enforce a public policy that irresponsible drivers shall not, with impunity, be allowed to injure their fellows. The scheme of the legislation would be frustrated if the reckless driver were permitted to escape its provisions by the simple expedient of voluntary bankruptcy, and, accordingly, the legislature declared that a discharge in bankruptcy should not interfere with the operation of the statute. Such legislation is not in derogation of the Bankruptcy Act. Rather it is an enforcement of permissible state policy touching highway safety." [21]

We do not regard as of critical significance the fact that the Utah statute provides for an indefinite suspension in the absence of settlement of the judgment, whereas the New York statute was limited in operation to three years. [22]

Hence, the Utah statute (insofar as we are required to pass upon it) would be valid, aside from its provision that copies of unexecuted judgments, necessary as foundations for action by the commission, must be forwarded at the request of the judgment creditor. Does this point render the act invalid? It seems a somewhat frail one upon which to rest a finding of unconstitutionality, although en-

tirely sufficient if it be established that its basis and justification are the coercion of bankrupts into the payment of discharged debts.

Despite proper distrust of the police power as an instrument or occasion for private action, examples may be cited of the necessity and effectiveness of action by injured parties in setting in motion a system for the public's protection. Parties as to whom or against whose interest criminal offenses, punishable under the police power, have been committed, may make complaints before committing magistrates. Unless they do so, ordinarily criminal prosecution, especially with respect to certain types of offenses, may not be set in motion. The requirement of a criminal complaint is largely for the protection of the defendant. The same can be said of the requirement in the act in question that the creditor initiate the process of suspension.

If the forwarding of judgments, remaining unsatisfied for some period were mandatorily required of clerks, numerous licenses likely would be revoked even though the judgments had in fact been satisfied or the debtors had made at least some informal arrangement or settlement with the creditor. As a practical matter, the view reasonably could be entertained that the forwarding of copies of unsatisfied judgments at the request of judgment creditors would be a procedure best designed to protect both the public and the licensees within the legitimate objectives of the police power. [23] There might be differences of opin-

21. At page 37 of 314 U.S., at page 27 of 62 S.Ct.

22. The New York statute directed the commission to suspend the license for three years unless, in the meantime, the judgment were satisfied or discharged, except by a discharge in bankruptcy. However, the suspension would continue after the expiration of the three years or satisfaction of the judgment, until the licensee gave proof of his ability to respond in damages by the procurement of insurance, the giving of a bond, or the posting of a deposit. The Utah statute

provides that upon payment of the judgment to the amount of the required insurance ($5,000 bodily injury to or death of one person, $10,000 for more than one, and $1,000 property damage), the driving privileges may be restored upon the furnishing of proof of financial responsibility. Utah Code Annotated, 1953, 41–12–1; 41–12–16.

23. Another provision of the law not now under attack (41–12–15 Utah Code Annotated, 1953) provides that as to the more serious automobile accidents, prior to the entry of any judgment, but upon

ion as to the means best calculated to carry out the legitimate purposes of the act with due regard to the rights and convenience of the parties involved. It is not the problem of the court to resolve these reasonable differences. Certainly it cannot be said that such a provision as is here in question necessarily conflicts with the bankruptcy act, if the mandatory forwarding of judgments for action would not do so. The power to declare legislative enactments unconstitutional should be exercised with extreme caution.[24] The court cannot assume that state legislative enactments are adopted arbitrarily or without good reason to further some legitimate policy of the state.[25] Highway regulations enacted by a state carry a strong presumption of validity when challenged in court.[26]

It is our judgment that the petition should be denied, and it is so ordered.

the basis of a statutory accident report, unless there is evidence that the operators involved have been released from liability, their operating privileges are to be suspended until they furnish specified security, but only if an injured party has submitted evidence of his damages to the commission. The incorporated creditor control also seems primarily for the benefit of the prospective debtor and points up the hardship that might unnecessarily result to him if the suspension were automatic.

24. DeVries v. Alger, supra, 44 N.W.2d 872.

25. Allied Stores of Ohio, Inc. v. Bowers, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480.

26. Cf. Bibb v. Navajo Freight Lines, Inc., 359 U.S. 520, 79 S.Ct. 962, 3 L.Ed.2d 1003.