**John Ivery ROBERTS, for himself and for all others similarly situated, Plaintiffs,**

**v.**

**Colonel R. H. BURSON, Individually and in his capacity as Director of the Georgia Department of Public Safety, Captain D. S. Harris, Jr., individually and in his capacity as Supervisor of the Georgia Department of Public Safety, and the Georgia Department of Public Safety, Defendants.**

**Civ. A. No. 12588.**

United States District Court, N. D. Georgia, Atlanta Division.

Sept. 15, 1969.

Wm. H. Traylor, Atlanta, Ga., for plaintiffs.

Arthur K. Bolton, Atty. Gen., Atlanta, Ga., for defendants.

Before MORGAN, Circuit Judge, and HOOPER and HENDERSON, District Judges.

PER CURIAM:

This is an action for declaratory and injunctive relief brought pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1343(3) and (4), and 28 U.S.C. §§ 2201 and 2202, alleging the deprivation of rights, privileges, and immunities secured by the equal protection and due process clauses of the Fourteenth Amendment of the Constitution of the United States. Since the constitutionality of Georgia Code Annotated §§ 92A–605, 92A–606, 92A–607, 92A–610 and 92A–615.1 is being attacked, a three-judge federal district court was convened pursuant to 28 U.S.C. §§ 2281 and 2284. Additionally, plaintiff brings this action on his behalf and on behalf of all others similarly situated in order to form a class action.

Plaintiff John Ivery Roberts, the owner of a 1966 Dodge automobile, loaned his car to his brother, Eugene Roberts, for his personal use and enjoyment. While driving plaintiff's car in the City of Atlanta, Georgia, on January 22, 1969, Eugene Roberts was involved in an automobile accident with Chester C. Bell. As a result of this accident, plaintiff's car was damaged in the amount of $898.-00. The car owned and driven by Bell was damaged in the amount of $751.33.

Neither plaintiff nor his brother have admitted responsibility for damages caused by the accident in question, and both have resisted the attempts of Bell's insurer, Motors Insurance Corporation, CIM Insurance Corporation, to persuade them to pay for damages to Bell's car. In that neither plaintiff nor Eugene Roberts have insurance and have refused to accede to settlement demands by Bell's insurer, the insurance company proceeded to file an accident report as required by Georgia Code Annotated 92A–604 with the defendants. As a result, on March 10, 1969, both plaintiff and his brother received notice from defendant Harris that their driver's licenses would be suspended, effective April 10, 1969, unless they complied with the requirements of the Safety Responsibility Act prior to that time. Accordingly, since the requirements were not met, the license suspension became effective.

Before proceeding with a discussion of law, we would like to interject at this point the following commentary. Plaintiff Roberts is a 20-year old black citizen of the United States, residing in Atlanta, Georgia, and is a full-time employee at the Meva Corporation in Atlanta, where he earns approximately $95.00 per week. With these earnings plaintiff supports his wife and step-daughter. It is the contention of the plaintiff that he is a "poor" person, and in order to support portions of his claims, this contention of indigency must be substantiated. Without need of further discussion, it is readily apparent from the information above that plaintiff Roberts is neither a pauper nor a person suffering from unusually dire circumstances. In this respect, plaintiff lacks standing to present these issues in which this criterion is a prerequisite; however, in the interest of finality and in order to give some certainty to the law, we will not raise the question of standing since this will in no way affect the ultimate outcome of the case.

The Georgia Safety Responsibility Act,[1] Georgia Code Annotated, Tit. 92A §§ 601–621, provides for suspension of driver's licenses, vehicle registration certificates and registration plates of all drivers and owners of any vehicle involved in an accident which results in bodily injury or death, or property damage of $100.00 or more. However, sus-

1. In Re Kesler, 187 F.Supp. 277 (D.Utah, 1960):

"It must be recognized that automobile financial responsibility acts, which by now are common in the majority of states of the United States, have been rather consistently upheld against constitutional and other objections. This has been on the theory that the state, in the exercise of its police power may reasonably regulate the use of its highways, with the objective, among others, of minimizing the hardship flowing from the financial irresponsibility of users involved in accidents. [Citations omitted]."

pension may be avoided before it occurs if an uninsured motorist files satisfactory evidence with the Department of Public Safety that he has been released from liability, or has been finally adjudicated not liable, or posted bond in the full amount. Of course, a motorist who has a valid automobile liability insurance policy comes within this exception. The Safety Responsibility Act itself allows an administrative hearing and de novo review of that administrative decision. However, during such hearing and the appeal therefrom, appellant may not operate a motor vehicle.

Plaintiff's first contention is that he is denied due process of law guaranteed by the Fourteenth Amendment because the Safety Responsibility Act fails to provide uninsured persons involved in certain automobile accidents full hearings on the question of liability and fault prior to license suspension.

Plaintiff's second contention is that the Safety Responsibility Act, which requires that an uninsured motorist who has been in an accident either settle the damage claim against him or post bond in the amount claimed, and upon failure to do so have his license suspended, is unconstitutional in that it denies equal protection to impoverished motorists who cannot afford to pay bond and must thus have their license suspended in order to go to court on liability and damages.

In discussing the first claim that plaintiff presents, the threshold issue is whether the state has the right to abridge interstate commerce as it has done here. This question is easily answered in the affirmative with a study of Hendrick v. Maryland, 235 U.S. 610, 35 S.Ct. 140, 59 L.Ed. 385 (1915) in which the long-established rule was stated to be:

"a state may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles * * * is but an exercise of the police power uniformly recognized as belonging to the state."

In the area of due process, the determination must be reached as to what is the standard to be employed in deprivation of a driver's license. The main case in this area would be Wall v. King, 206 F.2d 878, cert. den. 346 U.S. 915, 74 S.Ct. 275, 98 L.Ed. 411, decided by the First Circuit in 1953. A reading of this case reveals that the Court determined that "the freedom to make use of one's own property, here a motor vehicle, as a means of getting about from place to place, whether in pursuit of business or pleasure, is a 'liberty' which under the Fourteenth Amendment cannot be denied or curtailed by a state without due process of law". Continuing, the Court, in *Wall*, supra, concluded: "The incidental hardship upon an individual motorist, in having his license suspended pending investigation and review, must be borne in deference to the greater public interest served by the statutory restriction. It is well settled that the concept of due process of law does not necessarily require the granting of a hearing prior to the taking of official action in the exercise of the police power. [Citations omitted]." It is quite apparent that no prior hearing is necessary for the suspension of a driver's license.[2]

Two recent district court cases, one of which was decided by a three-judge district court, have had the occasion to rule on statutes extremely similar to the Georgia statute here under attack. In Llamas v. Department of Transportation, 320 F.Supp. 1041 (Eastern District

2. The case of Sniadach v. Family Finance Corporation of Bay View, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), is not inconsistent with the determination that the procedure of the Georgia Responsibility Law is not violative of due process. Under the Georgia law, the driver of an automobile involved in an accident is not required to post bond, i. e., he may relinquish his driver's license. In *Sniadach*, the wage-earner had no discretion and his wages were withheld without his consultation.

of Wisconsin, 1969), a three-judge court found that the questioned portion of the Wisconsin Financial Responsibility Law was not violative of the Fourteenth Amendment. In making its determination that a prior hearing is not required before the suspension of a license, the Court took note that the Wisconsin law provided for a hearing subsequent to the suspension in which the amount of the bond may be reviewed; however, the issue of fault may not be considered. Ruling on a motion for a three-judge court, a single judge in Perez v. Tynan, Commissioner of Motor Vehicles, 307 F. Supp. 1235 (District of Conn., 1969) determined that the same issues as those presented here did not constitute a sufficient federal question to merit the convening of a three-judge court. The Connecticut statute in question provided for the same procedures as those outlined in the Georgia and Wisconsin statutes; and, although it allowed for a hearing after suspension, it limited such hearing to the question of damages.

Employing the same procedure adopted by the Wisconsin and Connecticut statutes, the Georgia act provides that there shall be a hearing by the Director subsequent to suspension of the license if requested. A review of Georgia Code Annotated 92A–602 reveals that this hearing should be limited to the question of amount of damages. The Director has authorized to determine the amount of damages in order to establish the value of the required bond. No provision of the Act purports to give the Director the power to determine fault and any such action on his part would be outside the pale of authorization granted to him by the statute.

As to the question of equal protection, plaintiff contends that since he is an indigent he cannot post bond and cannot withstand losing the use of his driver's license in order to defend himself in a damage action. He will therefore settle, giving up even the most valid defenses. The issue of equal protection arises in that a person of means would have the resources to post bond and would be allowed to have use of his automobile without relinquishing his valid defenses. Although not binding on this Court, the teachings of Hadden v. Aitken, 156 Neb. 215, 55 N.W.2d 620 (1952), are very convincing and are, accordingly, adopted by this Court as the answer to this argument. As stated in *Hadden:*

"Financial responsibility laws such as this do not unconstitutionally discriminate against the poor. [Citations omitted]. Those damaged by the negligence of indigent drivers may be indigent also, and as little able as the drivers to bear the cost of such negligence. The fallacy of the argument that the law favors the rich over the poor lies in the failure to distinguish between equality of opportunity and ability to take advantage of the opportunity which is offered to all. The equality of the Constitution is the equality of right, and not of enjoyment. [Citations omitted]. Those who cannot afford to possess automobiles are as little able to enjoy the opportunity of driving on the public highways as those who cannot afford insurance or security. [Citations omitted]."

Cf. MacQuarrie v. McLaughlin, D.C., 294 F.Supp. 176 (1968).

## ORDER

In light of the above law, the claims of the plaintiff are dismissed as being without merit, and Georgia Code Annotated Sections 92A–605, 92A–606, 92A–607, 92A–610, and 92A–615.1 are found not to be offensive to the United States Constitution. Accordingly, these statutes are held constitutional, and plaintiff's requested injunctive relief is denied.

It is so ordered.

HOOPER, Senior District Judge (concurring specially).

While I agree with the majority opinion to the effect that the plaintiff John Ivery Roberts, driver of the car involved in the accident, is not entitled to relief I base my concurrence solely on the

ground that neither he nor his counsel have ever contended nor offered any proof that his negligence was not the direct and proximate cause, nor even a contributing cause, to the damages claimed. I can not concur, however, in the carefully prepared and well-expressed opinion by my distinguished colleague Judge Morgan, formerly of this court and now a member of the Court of Appeals, even though his conclusions find support in decisions in other states.

A summary of the vital facts in the case are simply these; plaintiff Roberts obtained a driver's license issued to him as a matter of course without tests and without any requirement as to liability insurance or proof of solvency. The mere fact that after the accident in question he did obtain insurance can not be used against him; the fault, if any, lies with the State of Georgia for not requiring such insurance when he obtained his license. He loaned his car to his brother Eugene Roberts, who was involved in an accident with one Chester C. Bell who claims damages in the amount of Seven Hundred Fifty One Dollars and Thirty-Three Cents ($751.33). Having failed to post bond to cover the damages the driver's license of each plaintiff was suspended. The Georgia statute gave plaintiffs the right to make administrative proof contesting the amount of the damages but no right to make such proof contesting the issue of liability. The statute permitted petitioners to have a de novo hearing in the State courts on the issue of the amount of damages but expressly denied them the right to contest the issue of liability or the issue of probable liability. The fact that plaintiffs apparently have made no effort to settle the claim can not affect the validity of the statute; however, plaintiff John Ivery Roberts earns Ninety Five ($95.00) Dollars per week wages.

We must erase from our minds any circumstances which might make us reluctant to grant relief to these plaintiffs and consider the validity of the statute in question as to any others in the future who may be unjustly deprived of a valuable * * * and in many cases an economically essential privilege * * of driving a motor vehicle in this state.

A simple illustration of possible deprivation of rights under the statute would be the following case: A truck driver with a family to support and having no skills except driving vehicles, and having insufficient funds to afford a liability insurance policy has an accident under circumstances requiring a finding that he was not at fault. It may be an accident wherein all witnesses agree a child ran out in front of his car and the consequent injury was unavoidable by the driver. A large sum was demanded for settlement on account of serious injuries and found by the Department and the State court to be a reasonable amount. The driver offered evidence to show that it was impossible for plaintiff to recover but such evidence was rejected by the Georgia Department of Public Safety and by the State court in the de novo hearing. The driver could not force an immediate hearing before any tribunal to show that there was no probable cause for the award of damages against him and the claimant could wait until almost barred by the statute of limitations before bringing suit. If the claimant, however, filed suit immediately many months would pass before a final adjudication, during which time the driver would be without employment and perhaps he and his family would be on relief. It is suggested by counsel for defendant in this case that the driver might bring an action for declaratory judgment, but that action is subject to the same delay as an action for damages. Moreover, it is not the matter of final adjudication as to liability that is involved but there is involved the question whether or not there is "at least the probable validity of the underlying claim" against the driver.[1]

---

1. See language by Mr. Justice Harlan in the case of Sniadach v. Family Finance Corporation of Bay View, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) involving the right of a debtor to a hearing when his wages are garnished prior to

All other arguments made by plaintiffs have been fully, and I believe correctly, answered by Judge Morgan in his excellent opinion.

judgment. See, however, Perez v. Tynan, 307 F.Supp. 1235, 1969, U. S. District Court, District of Connecticut, involving a statute which apparently established an exception to the posting of security including "circumstances wherein the other driver involved was convicted of negligent homicide * * * or other statutory vehicular misconduct."