STATE of Utah, Plaintiff and Respondent,

v.

Richard CAUBLE, Defendant and Appellant.

No. 14433.

Supreme Court of Utah.

April 20, 1977.

4. *Barnhart v. Civil Service Employees Ins. Co.*, 16 Utah 2d 223, 398 P.2d 873 (1965).

Michael D. Esplin, of Utah County Legal Defenders Association, Provo, for defendant and appellant.

Vernon B. Romeny, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

ELLETT, Chief Justice:

Appellant has appealed from a conviction of theft, a felony of the second degree. The conviction carries a penalty of not less than one nor more than fifteen years at the Utah State Prison. The pertinent facts leading to the conviction of appellant are summarized as follows:

Appellant was employed as a salesman by Western Leisure Industries, Inc., a wholly-owned subsidiary of Blazon Corporation. On November 13, 1974, he sold three of Western Leisure's trailers and accepted a check in payment thereof drawn on Zions First National Bank in Utah County in the amount of $9,262. Appellant took the check to Tracy-Collins Bank & Trust Company in Salt Lake County where he opened an account in the name of his own personal company, the Mansford Corporation. He endorsed the check on behalf of Western Leisure and deposited it in the Mansford account, retaining cash in the amount of $262. He then withdrew $4,917.66 in the form of a cashier's check made payable to Blazon Corporation, the parent of Western Leisure, and delivered this check to the Blazon comptroller in Salt Lake City. Appellant "loaned" the $4,917.66 to Blazon so that it could meet its current payroll and accepted a promissory note in exchange for the cashier's check. Appellant was subsequently arrested, tried, and convicted under Section 76–6–404, U.C.A.1953 (1975 Pocket Supp.) which reads:

A person commits theft if he obtains or exercises unauthorized control over the property of another with a purpose to deprive him thereof.

Appellant claims the following errors on appeal:

(1) Venue was improper in that the crime occurred in Salt Lake County but trial was held in Utah County,

(2) The state failed to prove all the elements of the offense, and

(3) The trial court committed prejudicial error by admitting evidence of prior crimes for which there was no conviction.

The thrust of appellant's argument that venue is improper is directed at the Utah statute [1] which he contends is unconstitutional because it contradicts the Utah Constitution.[2] The pertinent part of Article VIII, Section 5 of the Utah Constitution states:

. . . All civil and criminal business arising in any county, must be tried in such county, unless a change of venue be taken, *in such cases as may be provided by law.* [Emphasis added.]

In *State ex rel. Shields v. Barker* [3] the words "established by law" or "provided by law" were construed to mean the laws passed by the law-making power of this state. The definition thus would seem to imply that the Constitution grants to the legislature the power to pass such laws relating to the change of venue and the application thereof as it deems proper.

 Ever since *White v. Rio Grande Western Ry. Co.* [4] was decided in 1903, this Court has consistently interpreted Article VIII, Section 5 to mean that jurisdiction is neither conferred nor restricted by that section but merely that the district court has original jurisdiction as defined in Article VIII, Section 7 of the Constitution of Utah. The *White* [5] case pointed out that the Constitution merely recognizes the existing common-law doctrine of venue and intends to prohibit a change of venue except when authorized by law. The right guaranteed by the Constitution of Utah is the right to a speedy and a fair trial as provided in Article I, Section 12. *White* points out that the companion right, the right to be tried in the county in which the crime occurred, is a *personal privilege* which can be waived by failing to make a proper objection.[6] This Court has long recognized that a statute

which contravenes a constitutional provision is void; but here, the wording of Article VIII, Section 5 implies that the legislature has been given the power to pass laws regarding the waiver of, or the application of, the privilege of venue. Thus, the existing statute [7] is found to be constitutional. The pertinent portions are as follows:

Venue of actions.—(1) Criminal actions shall be tried in the county or district where the offense is alleged to have been committed. In determining the proper place of trial, the following provisions shall apply:

\* \* \* \* \* \*

(b) When conduct constituting elements of an offense or results that constitute elements, whether the conduct or result constituting elements is, in itself, unlawful, shall occur in two or more counties, trial of the offense may be held in any of the counties concerned.

\* \* \* \* \* \*

(g) When an offense is committed within this state and it cannot be readily determined in which county or district the offense occurred, the following provisions shall be applicable:

\* \* \* \* \* \*

(iii) A person who commits theft may be tried in any county in which he exerts control over the property affected.

\* \* \* \* \* \*

(2) *All objections of improper place of trial are waived by a defendant unless made before trial.* [Emphasis added.]

█ In the matter before us, the first objection to place of trial was not made until after the prosecution had rested its case; therefore, appellant cannot be heard to raise the objection on appeal because the statute clearly states it must be made before trial. Due to the grave consequences

---

1. 76–1–202, U.C.A. 1953 (1975 Pocket Supp.).

2. Article VIII, Section 5, Constitution of Utah.

3. 50 Utah 189, 167 P. 262 (1917).

4. 25 Utah 346, 71 P. 593 (1903).

5. *White, supra.*

6. *White, supra* at p. 358, 71 P. 593.

7. 76–1–202, U.C.A. 1953 (1975 Pocket Supp.).

of any criminal proceeding, however, we feel compelled to examine the record to determine whether or not appellant has been unjustly prejudiced by the strict application of a procedural rule.

In determining the proper place of trial, where two or more counties are involved, the venue statute provides that trial may be held in any of the counties in which the conduct constitutes the elements of the offense charged. The elements of theft under the Utah Code are that appellant (1) obtained or exercised unauthorized control over another's property, and (2) that he had a purpose to deprive the owner of the property.[8]

"Purpose to deprive" is defined as requiring conscious intent.[9] The record discloses that appellant, by his own admission, formed the conscious intent to keep the sale proceeds for himself while he was still in Utah County and before the sale of the trailers was completed. The pertinent testimony given by appellant in his own behalf is as follows:

Q. . . . Now, when did you first get the idea in your mind to keep this $9200 check that you got from Mr. Wheelwright?

A. I think it was the day before I actually picked it up.

Q. Sir, did you ever tell anybody in the Company specifically about the Wheelwright transaction?

A. About the Wheelwright transaction, no.

The testimony alone is conclusive that the intent to deprive Western Leisure of the proceeds of the sale was consciously formed by appellant before he received the property and while he was still in Utah County. This conclusion is given further impetus by appellant's admission that he did not disclose the fact that a sale had been made at all.

The most difficult question arises as to *when* appellant's control over the money became unauthorized—when he received

the check into his possession at the time the sale was made in Utah County, or when he deposited the check into his personal account at Tracy-Collins Bank in Salt Lake County. Appellant claims that he was authorized to accept money on behalf of Western Leisure and, therefore, no crime could have occurred until the property was actually converted to his own use at the Salt Lake bank. The record does not support this contention. The voir dire examination of Mr. Giles, the comptroller for Western Leisure and Blazon, discloses the following:

Q. Who did you delegate to handle the money?

A. Norma (Peterson) was the one I delegated to make the receipts and actually make deposits.

Q. What authority did you delegate to Mr. Cauble?

A. I delegated no authority to sign checks or make deposits in behalf of the company.

Let me clarify that. There may have been an occasion when I made out a deposit and because Mr. Cauble was taking a check or going by a bank, he may have made a deposit in behalf of the Company. But I would have endorsed the check and made out the deposit because Mr. Cauble wasn't authorized to endorse checks or sign checks.

This testimony was corroborated by Norma Peterson, the secretary for Western Leisure, who further stated:

Q. As you observed his (Cauble's) activities what, if anything, did he do with the money end of the business?

A. None, whatsoever, other than he would pick up a check when he would deliver a trailer occasionally and bring it back to me or to Mr. Giles.

It appears from the foregoing testimony that appellant's authority was limited to accepting payments from customers and immediately turning the proceeds over to Mrs. Peterson at her office in Utah County for receipt and deposit. On the few occasions when the appellant did make deposits

---

8. 76-6-404, U.C.A. 1953 (1975 Pocket Supp.).

9. 76-6-401, U.C.A. 1953 (1975 Pocket Supp.).

for the company, it was in response to an express request by the company. But the deposits were not turned over to appellant until after the checks had been properly endorsed and the deposit slips prepared by either Mrs. Peterson or Mr. Giles. At no time did appellant have the authority to endorse checks or to deposit them under his own initiative.

It seems clear that when appellant formed the intent in Utah County to keep the proceeds from the Wheelwright sale; when he failed to deliver the check to Mrs. Peterson; and, further, when he failed to notify the company that a sale had even been made, that the elements of the offense were well established by his conduct at that point in time, and therefore meet the statutory requirement. This view has been adopted in other jurisdictions as well.[10]

Appellant has contended that the unlawful conduct did not occur until the bank in Salt Lake City accepted the check from him. Banking practices can be used as one measure to determine when and where the crime was technically committed, and we find authority to support the view that since a bank does not recognize a transaction as complete until final payment from the originating bank is cleared, an offense of embezzlement is begun in the county where the check is drawn and completed in the county where it is ultimately paid.[11] In the instant case, the check in question originated in Utah County and was ultimately paid there.

Regardless of the standard applied herein, the conduct of appellant which constitutes the elements of the offense is found to have occurred to a substantial degree in Utah County. We find that venue was properly laid in Utah County and that appellant's rights, therefore, were not prejudiced by a finding that he waived his objection to venue under the statute.

■■ Appellant's second point of error that all the elements of the offense were not proved is entirely without merit. The only elements needed to be proved under the statute are (1) the intent to deprive another of his property, and (2) the obtaining unauthorized control over the property. The foregoing discussion is dispositive of this claim. Furthermore, it should be pointed out that venue is *not* an element of the offense and need be proved merely by a preponderance of the evidence.[12]

■ The third error claimed by appellant is that the trial court erred when it admitted evidence of prior crimes for which appellant had not been convicted, thereby resulting in prejudice to appellant's basic rights. Rule 55 of the Utah Rules of Evidence states in part:

> . . . evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove . . . that he committed another crime or civil wrong on another specified occasion but, . . . such evidence is admissible when relevant to prove some other material fact including absence of mistake or accident, motive, opportunity, intent, preparation, plan, knowledge or identity.

In *State v. Schieving*[13] evidence was admitted to show cash shortages in the Traffic Violations Bureau where defendant worked but which were not proved to have been caused by defendant. Consistent with Rule 55 above, we said:

> . . . The general rule is that in a criminal case evidence which shows or tends to show that the defendant had committed another crime in addition to that for which he is on trial is inadmissible. However, an exception to the rule is

10. *State v. Dykes*, 261 Iowa 1363, 158 N.W.2d 154 (1968); *Williams v. State*, 365 P.2d 569 (Okl.Cr.1961); *People v. Brock*, 21 Cal.App.2d 601, 70 P.2d 210 (1937).

11. *People v. Keller*, 79 Cal.App. 612, 250 P. 585 (1926); *State v. Johnson*, 109 Kan. 239, 199 P. 104 (1921).

12. *State v. Mitchell*, 3 Utah 2d 70, 73, 278 P.2d 618 (1955).

13. Utah, 535 P.2d 1232 (1975); See also *State v. Lack*, 118 Utah 128, 221 P.2d 852 (1950).

that evidence of another crime is admissible when it tends to establish motive; intent; absence of mistake or accident; or to show a common scheme or plan embracing commission of similar crimes so related to each other that the proof of one tends to establish the crime for which the defendant is on trial.

Here, appellant's defense was based on a claim of right and his intent, therefore, was crucial. Evidence of other sales proceeds having been taken by appellant was allowed not to impeach his testimony, but to establish a common plan or scheme and to show a motive such that the jury could assess the honesty of appellant's testimony as to his belief that the money belonged to him. Admission of the prior thefts was proper under Rule 55, Utah Rules of Evidence, and the trial court committed no error.

The judgment is affirmed. No costs are awarded.

CROCKETT, MAUGHAN and HALL, JJ., concur.

WILKINS, Justice (concurring with comment):

I concur with the majority opinion, adding these few comments about the appellant's claim of the third error relating to the admission of evidence of prior crimes. Appellant stated repeatedly at trial that he had taken no other funds from Western Leisure as an "offset" except the check for $9262 denominated as the "Wheelwright transaction." This evidence was received without objection.[1] (After objection, which was not timely, appellant admitted to the "offsetting" of other funds.) Therefore, in addition to the other reasons stated in the majority opinion for denying the validity of this claim of error, I note this matter.

---

1. Rule 4, Utah Rules of Evidence, generally requires a timely objection to evidence and I perceive no valid reason for not applying the general rule in this case.