## PEOPLE *v.* SHERMAN.

*(Supreme Court, General Term, Fifth Department.    October 23, 1891.)*

1. LARCENY—POSSESSION OF PROPERTY AS AGENT.
    The general manager of an elevator company, having the management of the company's grain elevators, and the complete control of the grain therein, with power to cause it to be transferred from one elevator to another, has the grain in his "possession, custody, or control" as the agent or officer of the company, within the meaning of Pen. Code. § 528, which declares that any person who, having property in his possession, custody, or control as the agent or officer of any person or corporation, appropriates the same to his own use, or that of any person other than the owner, with intent to deprive and defraud the owner, is guilty of larceny.

2. SAME—LARCENY OF GRAIN—EVIDENCE OF SHORTAGE.
    On a prosecution of the general manager of a grain elevator for the larceny of about 8,000 bushels of grain therefrom, where there is evidence that there was a shortage of 16,000 bushels in the quantity of grain in the elevator, evidence that 8,000 bushels were removed on the day prior to the removal of the grain the defendant is charged with stealing is competent.

3. SAME.
    In such prosecution, testimony of defendant's employes as to a device by which they made the quantity of grain in the elevator appear to hold out, by arranging the machinery so as to reweigh some of it, is admissible, though it is not shown that defendant directed such double weighing.

4. REFRESHING MEMORY OF ONE'S OWN WITNESS.

   Where a witness for the prosecution, who, when before the grand jury, gave important evidence against defendant, testifies differently on the trial of the indictment found, and it is shown that since testifying before the grand jury he has talked with defendant in regard to his testimony, the prosecuting attorney may call his attention to his testimony before the grand jury, for the purpose of refreshing his memory, though not for the purpose of impeaching him.

Appeal from court of oyer and terminer, Erie county.

Indictment of Stephen F. Sherman for larceny. Defendant was convicted, and appeals.   Affirmed.

Argued before DWIGHT, P. J., and LEWIS and MACOMBER, JJ.

*Truman C. White,* for appellant.   *William L. Marcy,* for respondents.

LEWIS, J.   It was charged in the indictment that at all the times mentioned the Buffalo Elevating Company was, and still is, a body corporate, engaged in the receiving, storing, discharging, and elevating of grain in the city of Buffalo, and that there also existed in Buffalo a corporation known as the "International Elevating Company," engaged in the same business; also one known as the "Lake Shore Elevating Company;" and that these three incorporated companies were combined and associated together in the common business of receiving, elevating, storing, and discharging grain under the name, style, and designation of the "Associated Elevators," and that the defendant was a manager and director in each of these corporations, and was also the manager, clerk, servant, officer, and agent of their association of elevators; and, being such director, manager, etc., of the Buffalo Elevating Company, and also of the Associated Elevators, he had on the 22d day of September, in the year 1888, in his possession, custody, and control, a quantity of wheat, the property of the Buffalo Elevating Company, and that he feloniously appropriated to his own use 8,250 bushels and 30 pounds of wheat, of the value of $1.35 per bushel, the property of the Buffalo Elevating Company, with intent to deprive and defraud the Buffalo Elevating Company of said wheat, and did feloniously steal the same.   The corporation known as the "Buffalo Elevating Company" owned and operated two elevators,—the Dakota and the Sturgis. The three corporations named in the indictment had entered into a mutual arrangement by which they employed a common manager to conduct their business affairs.   The business carried on by this association of elevators in the year 1888 was very great, requiring many employes.   All of them were under the control of the defendant as such manager.   Books of account were kept by each corporation, and also at the central office of the association of elevators.   The 8,250 bushels of wheat which the defendant was charged with embezzling were in the elevator known as the "Dakota."

The evidence upon which the people relied to convict the defendant was largely circumstantial, and very voluminous.   It covers more than 400 pages of a printed case.   There being no eye-witness to the larceny, there being so many employes, the quantity of grain in the elevator being so large, and portions of the same, for the purposes of convenience, being frequently transferred from one elevator to another, proof of the commission of the crime became very difficult.   There were many facts and circumstances shown which the people claim tended to prove the guilt of the defendant.   None of the facts, taken alone, would seem to be very significant to prove the commission of the crime, but, taken together, they tended to show his guilt.   The defendant had theretofore occupied a respectable position in the business community.   He held a position of great trust and responsibility.   The defense was conducted with great vigor and ability.   The jury, after a long and careful trial, pronounced him guilty of the crime charged against him.   A rehearsal of all the facts and circumstances proved tending to establish his guilt would require so much labor and space as to be impracticable.   A careful

perusal of the testimony has convinced us that the verdict was sustained by the evidence, and, unless errors were committed upon the trial requiring reversal, the judgment of conviction should stand.

The defendant was the general manager of the elevator in which the grain was stored. He had complete control of the grain. He had power to cause it to be transferred from one elevator to another, and must be held, we think, to have had the wheat in his possession, custody, and control as the agent or officer of the elevator, and to come within the provisions of section 528 of the Penal Code.[1]

The trial court permitted evidence of the removal of 8,002 bushels of wheat from the same elevator the day prior to the removal of the wheat the defendant was charged with stealing. It was claimed by the people, and the proof tended to show, that there was a shortage of about 16,000 bushels in the quantity of wheat in the Dakota elevator. The defendant being the general manager of the elevator, this deficiency in the quantity of wheat belonging in the elevator was an important fact, and this evidence was competent as tending to show such shortage. We do not see that the defendant could have been prejudiced by this evidence.

One Frank A. Klives was a witness before the grand jury, and gave important evidence for the people against the defendant. He was called as a witness upon the trial. The prosecuting attorney claimed to be disappointed in his evidence given upon the trial. He claimed that he was attempting to shield the defendant by testifying differently from his testimony given before the grand jury. The people's counsel was allowed by the court to call the witness' attention to questions propounded to him when he was testifying before the grand jury and his answers to the questions. He testified that, after giving his evidence before the grand jury, he was interviewed by the defendant, and frequently saw the defendant at defendant's residence, and that the subject of his evidence before the grand jury was discussed, and defendant made suggestions to him in reference to it, telling him that some things he had testified to before the grand jury were not true. The objection of defendant's counsel was premature. The answers of the witness were harmless. They did not prejudice the defense. The examination, we think, under the circumstances, was proper, not for the purpose, as was suggested by the trial court, of impeaching the witness, but for the purpose of refreshing his mind, and eliciting from him the truth. *People* v. *Ricker*, 4 N. Y. Supp. 70; *People* v. *Kelly*, 113 N. Y. 647–651, 21 N. E. Rep. 122.

The evidence of Crowley and Murphy as to the device resorted to to make the quantity of the grain in the Dakota appear to hold out, was competent as tending to show that there was in fact a shortage of grain in the elevator. They testified, in weighing the grain, to ascertain how much there was in the elevator, they so arranged the machinery as to reweigh nine or ten thousand bushels of the wheat. That amount, added to the conceded deficiency of 2,500 bushels, made about the shortage of the grain in the elevator as finally ascertained. It was not proved that the defendant personally directed this double weighing of the grain. It, in fact, was done when he was absent from the city. It was done, however, by men who had no interest, so far as appears, in making the grain hold out; and they were men under the control and management of defendant. We find no error committed upon the trial which could have prejudiced the defendant's case. The case seems to have been presented to the jury fairly, and they were justified, from the evidence, in finding that the defendant directed the wheat to be removed from the Dakota.

[1] Pen. Code, § 528, declares that any person who, having in his possession, custody, or control, as the agent or officer of any person or corporation, any property, appropriates the same to his own use, or that of any person other than the owner, with intent to deprive or defraud the owner, steals such property, and is guilty of larceny.

elevator with a view of appropriating it to his own use, and was, by so doing, guilty of the crime of larceny, as charged in the indictment. The judgment appealed from should be affirmed. All concur.