The State v. Johnson.

---

No. 22,904.

THE STATE OF KANSAS, *Appellee,* v. E. H. JOHNSON, *Appellant.*

SYLLABUS BY THE COURT.

1. EMBEZZLEMENT—*By Officer of Corporation—Sufficiency of Information.*  The rule that an information charging embezzlement by a bailee must set out the circumstances under which the property was received by the defendant in order that the character of the bailment may be shown has no application to a charge against the officer of a corporation for embezzling its funds.

2. SAME.  The fact that the president of a corporation whose duties include the general supervision of its affairs is described in an information charging him with embezzling its funds, by the additional title of general manager, a position not recognized by the by-laws, is not a ground for setting aside a conviction.

3. SAME—*Funds in Bank—Defendant's Custody and Possession of the Same.*  The funds of a corporation deposited in a bank in its name, which in practice are paid out on checks signed by the president, are in his possession and under his care in such sense as to render him liable for embezzlement in case of his using for his own benefit sums so withdrawn, notwithstanding provisions of the by-laws that the treasurer of the corporation should have custody of the money and that its deposits should be checked against only by him or other persons designated by the management.

4. SAME — *Conversion of Corporate Funds — Accomplished by Drawing Check on Bank Deposit for Officer's Private Benefit.*  Conversion of the funds of a corporation may be accomplished by an officer thereof drawing a check on its deposit and obtaining money which he uses otherwise than for the benefit of the corporation, although the check when it reaches the bank on which it is drawn is merely marked paid and charged to the corporation's account, no money being passed over the counter; and the act may constitute embezzlement, although such officer derives no personal benefit from the transaction.

5. SAME—*Corporate Funds in Bank—Check Drawn for Private Advantage—Venue in County Where Bank is Situated.*  Where an officer of a corporation, who has a right to draw upon its deposit in a bank for its benefit, wrongfully draws a check thereon for his own .advantage,

which is ultimately paid, he is liable to prosecution for embezzlement in the county where the bank is situated, without regard to where he was when he drew the check and obtained money or other property for it.

6. SAME—*Charge in Four Counts—No Election Required.* The overruling of a motion to require the state to elect as to the specific transactions it would rely upon for conviction upon the several counts respectively is held to have been nonprejudicial.

Appeal from Butler district court; ALLISON T. AYRES, judge. Opinion filed June 11, 1921. Affirmed.

*G. P. Aikman, C. L. Aikman, B. R. Leydig, K. M. Geddes,* and. *E. W. Grant,* all of El Dorado, for the appellant.

*Richard J. Hopkins,* attorney-general, *R. T. McCluggage, Arch F. Williams,* county attorneys, and *Stanley C. Taylor,* of El Dorado, for the appellee.

The opinion of the court was delivered by

MASON, J.: E. H. Johnson appeals from a conviction upon four counts charging him with embezzling money of the Railroad Men's Refining Company, a corporation of which he was the president.

The defendant introduced no evidence. The evidence of the state tended to show these facts: The charter of the corporation provided that its general offices should be located in El Dorado. It carried a deposit in its own name in a bank situated there. Checks upon this deposit were drawn from time to time signed with the name of the corporation by E. H. Johnson, president. These checks were paid by the bank and charged against the deposit. In four instances—to which the four counts corresponded—in which such checks were drawn their proceeds, or a part thereof, was used by the defendant for his own purposes and not for the benefit of the corporation.

1. Each count of the information alleged that on the date therein named the defendant had received and taken into his possession and under his care money to a certain amount—that of the check involved. The defendant asserts that the allegation was fatally defective in not setting out when and how the defendant received the money, and cites in support of the contention *The State v. Griffith,* 45 Kan. 142, 25 Pac. 616.

There the information alleged the embezzlement of property by one to whom it had been delivered as bailee, without describing the terms and character of the bailment, and was held insufficient on that account. The rule of that case is founded upon the generality of the term bailee and the different kinds of responsibility that may grow out of that relationship; it has no application where the embezzlement is charged to have been committed by an officer of a corporation.

2. The information alleged that the defendant was president and general manager of the corporation and had received the money embezzled, and had it in his possession and under his care, by virtue of his employment and position as such. The defendant asserts that there was no competent evidence that he was general manager and therefore the charge as made was not sustained. Witnesses testified (over objection) that the defendant was general manager as well as president, but the source of their information was not shown. The by-laws contained no provision for such an office or position, but in the enumeration of the duties of president included that of having "general supervision over the affairs of the corporation and over the other officers." The evidence tended to show that he performed services of the character suggested by the term general manager. In this situation the fact that the information gave him in addition to the title of president that of general manager, which was not recognized by the by-laws, can have had no prejudicial effect and is not a ground of reversal.

3. It is contended that the evidence does not show that the defendant ever received or had possession or care of the money he is charged with embezzling. The by-laws provided that the treasurer should have custody of all money of the corporation, and that its funds should be deposited in such bank as the directors should designate and withdrawn only upon the check or order of the treasurer "or other person designated by the management," the president being required to countersign all checks. The evidence sufficiently shows that the practice was for the defendant to sign checks drawn against the corporation's deposit and for the bank to pay them. Whether or not this was in strict accordance with the by-laws the conduct of the defendant is to be judged by the practical rather than the

technical aspect of the matter. The funds of the company being on deposit subject to checks signed by the defendant were in his possession and under his care in such sense as to make his appropriation of a part of them to his own use an act of embezzlement. (*People v. Britton,* 118 N. Y. Supp. 989.) It was not necessary to a conviction that his possession or care of the corporation's money deposited in the bank should have been exclusive. (*State v. Kortgaard,* 62 Minn. 7; *Reeves v. The State,* 95 Ala. 31.) In a somewhat similar situation it has been said:

"There is no more reason why courts should allow themselves to be misled by mere names and shadows in the administration of justice in criminal, than in civil cases. Calkins, under and by virtue of his employment, had the wheat in the warehouse of his employers so far under his care and in his possession and control as to give him the power to make an efficient transfer of title to any part of it to any person ·who should become the *bona fide* purchaser of a grain order issued by him in the name of Baldwin—a transfer of title effective in favor of the holder of such order, and against his employers. This power he used to divest his employers of their property, and to put the proceeds of it into his own pocket. We think he had all the care of the property which the statute contemplates, and that when he clandestinely transferred the title of wheat from the railroad company to an innocent holder of a grain order and appropriated the proceeds thereof to his own use, the act of embezzlement was complete." (*Calkins v. The State,* 18 Ohio St. 366, 371.)

"The secretary of a corporation cannot escape liability under said statute by the fact that, under the by-laws of the company, the treasurer was the custodian of its funds, where such by-laws were disregarded in the conduct of the business, and the funds converted actually came to the possession of the secretary." (*People v. Butts,* 128 Mich. 208, Syl. ¶ 3.)

"Nor have we any doubt that the money converted was in their [the defendants'] possession, and in the possession of each of them, within the meaning of the statute. They were directors of the company charged with the control of its property, and the checks of each, when drawn upon its funds, were honored without question." (*People v. Lay,* 193 Mich. 476, 489.)

"Funds payable upon money orders drawn by a postmaster or clerk having authority to issue the same in the regular course of his official duty may be deemed to be intrusted to such postmaster or clerk in the sense that, if wrongfully converted by him to his own use, he is guilty of the crime of embezzlement. Such funds are in fact subject to his official order; that is, they are set apart by the government for the payment of money orders issued by him, and are thus intrusted to his official care, although they may not be in his actual custody." (*United States v. Royer,* 122 Fed. 844, 845.)

"The defendant·was the general manager of the elevator in which the grain was stored. He had complete control of the grain. He had power to cause it to be transferred from one elevator to another, and must be held, we think, to have had the wheat in his possession, custody, and control as the agent or officer of the elevator." (*People v. Sherman*, 16 N. Y. Supp. 782, 784.)

The fact that the business was not handled in the way provided by the written regulations on the subject does not give the defendant immunity. A city clerk·has been held guilty of embezzlement with respect to money paid to him which should have been paid to the city treasurer instead (*The State v. Spaulding*, 24 Kan. 1), and a city treasurer, with respect to money illegally collected from violators of the liquor law (*The State v. Patterson*, 66 Kan. 447, 71 Pac. 860). Inasmuch as the defendant had and exercised the actual power to get the money out of the bank by signing checks he cannot be heard to say in defense to the charge against him that authority to do so had not been legally conferred upon him. (See notes, 23 L. R. A., n. s., 761; 3 Ann. Cas. 844.)

4. It is argued that the evidence is insufficient to support a conviction because it does not show to whom the corporation's money was paid by the bank, or that it was paid to any one. It was shown that the checks signed by the defendant, the proceeds of which were by him in whole or in part appropriated to other uses than for the benefit of the corporation, ultimately reached the bank on which they were drawn, where they were marked paid and charged against the corporation's account. This was a conversion of the money of the corporation although no cash was at the time handed out over the counter, upon the reasoning already indicated; and it rendered the defendant guilty of embezzlement irrespective of whether he derived any personal benefit from the transaction. (20 C. J. 428.)

5. It is contended that the evidence did not show the commission of a crime in Butler county—that no conversion was shown to have taken place there. Not all of the four checks with respect to which the defendant was found guilty were given in that county. One of them was given in Joplin, Mo., to a dealer in jewelry for a diamond pin. The cases are not entirely harmonious as to the considerations that determine the venue in embezzlement. The general rule is that the venue

may be laid in the county where the act of appropriation, or conversion, took place. (See note, L. R. A. 1918 E, 744-749, where the cases on the subject are fully collected and classified, among those having especial application to the situation here presented being *Carter v. State,* 143 Ga. 632, *Mangham v. State,* 11 Ga. App. 427, and those cited in a group on page 747.) One who being without the state commits or consummates an offense by an agent or means within the state is liable to punishment here (Gen. Stat. 1915, § 7930) ; and "When a public offense has been committed, partly in one county and partly in another, or the act or effects constituting or requisite to the consummation of the offense occur in two or more counties, the jurisdiction is in either county." (Gen. Stat. 1915, § 7932.) When the defendant, wherever situated at the time, drew a check against the corporation's deposit in the El Dorado bank and exchanged it for money or property not for the benefit of the corporation, the presentation of the check at the bank through whatever hands it had come, resulted in a reduction of the corporation's funds there on deposit by its amount; and this may fairly be regarded as the consummation of the offense of embezzlement such as to fix its venue, the conversion being complete when the bank makes an effective charge against the corporation's account, thereby diminishing its assets that much. This is in effect a conversion of the corporation's money, whether the bank pays the check in cash over the counter to the payee it names, or merely gives credit on its books to the holder from whom it receives it. In a strict technical sense the depositor has of course no actual money in the bank—he has no ownership of any specific currency or specie. But in a practical sense, under ordinary conditions, in the case of a solvent bank operated as a going concern, the depositor may be regarded as owning money to the amount of his deposit, and an agent who has a right to check upon it for his principal's benefit and wrongfully does so for his own advantage, embezzles the amount of money represented, although the check itself may have left his hands before being presented for payment. In a prosecution of a state treasurer for embezzling public funds, where legal questions of a somewhat similar nature were involved, it was said:

The State v. Johnson.

"For the purposes of this case, we shall assume that the construction of the statute contended for by the defendant is the proper one, namely, that the term 'money' was used by the legislature in a specific sense. In other words, it means legal-tender coin, and also paper issued by the government, or by banks by lawful authority, and intended to pass and circulate as money. It is insisted on behalf of the accused that, under the foregoing definition, he did not embezzle money—actual coin or currency—belonging to the state. It is true the state had no specific coins or currency in the possession of the Omaha National Bank, as it had made no special deposit of money in said bank. The state, at the time of the delivery of the check in question to the bank, had on deposit therein, under the depository law, money in excess of the amount found by the jury to have been embezzled, which constituted the bank the debtor of the state to that amount. . . . To constitute embezzle-ment it was not necessary that the defendant himself should have acquired the physical or manual possession of the money. He, by his check, authorized and directed the bank to pay the money called for therein. . . . The bank was thereby empowered to select and transfer the money to the payee, which in contemplation of law it did, although there was no actual handling of a dollar in the entire transaction." (*Bartley v. State*, 53 Neb. 310, 337, 338.)

"The several acts and matters elemental, directly or indirectly, of the purposed conversion of the state's money were but means to the end, and had reached their final accomplishment when, pursuant to the order of the check, the moneys of the state were paid out or transferred, not for its use or uses, but to perfect, to close and render entirely effectual the misappropriation of the money to the use or uses of the plaintiff in error." (Same case on rehearing, 55 Neb. 294, 297.)

6. Complaint is made of the overruling of a motion made by the defendant to require the state to elect as to what evidence it would rely upon for conviction as to each count. The date of each check served to show with reasonable clearness to which count it was intended to apply. Moreover, the county attorney in his opening statement sketched the evidence upon which he would ask conviction upon the several counts respectively, and the defendant in his brief indicates separately the evidence offered in support of each. It is evident, therefore, that no prejudice can have resulted from this ruling.

The judgment is affirmed.