No. 62,020

STATE OF KANSAS, *Appellant,* v. LELAND DICKENS AND LOIS ROBERTS, *Appellees.*

(757 P.2d 321)

Opinion filed July 8, 1988.

*Joseph E. Cosgrove, Jr.,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Dennis W. Moore,* district attorney, were with him on the brief for appellant.

*Carl E. Cornwell,* of Horner, Duckers & Cornwell, of Kansas City, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

PRAGER, C.J.: This is an appeal by the State from an order, made at the close of the preliminary hearing, dismissing complaints charging the defendants, Leland Dickens and Lois Roberts, with felony theft (K.S.A. 1987 Supp. 21-3701) and conspiracy to commit felony theft (K.S.A. 21-3302). The dismissal of the complaints was based upon the finding of the trial court that there was a lack of venue jurisdiction in Johnson County.

The evidence presented by the State showed that the defendant Lois Roberts, a resident of Leavenworth County, parked her 1983 Cadillac Seville in front of defendant Dickens' automobile repair shop in Kansas City, Kansas (Wyandotte County), on May 28, 1987. Later that day, Roberts checked to see if the necessary repair work had been done. Dickens reported to her that he had not seen the car all day. It appeared that the missing automobile had been stolen. The vehicle was discovered in Minneapolis, Minnesota, in October of 1987.

After it was discovered that the car was missing, Roberts

reported the theft to the police and to her insurance company, State Farm Mutual. Susan Swailes, a claims adjuster in the State Farm office in Mission, Kansas (Johnson County), contacted Roberts and offered her $8,500 in settlement. Roberts was upset, thinking the offer was too low. Swailes explained that the Cadillac had a diesel engine which reduced the value of the car. Roberts then advised the adjuster that she had had the engine converted from diesel to gasoline. Based on the new information, Swailes offered Roberts $14,500 in settlement for the car and asked Roberts to bring in a receipt or billing statement from the mechanic showing that the engine had been converted from diesel to gasoline.

On June 11, 1987, Roberts submitted a receipt or billing statement signed by defendant Dickens which stated that the conversion of the car from a diesel to a gasoline engine had in fact occurred. The bill was dated January 1987. As the result of the presentation of the billing statement, Swailes gave Roberts a draft from State Farm payable to Roberts in the sum of $15,376.

According to the State's evidence, the billing statement indicated that the conversion was done at Dickens' shop at 905 North 16th Street in Wyandotte County. Apparently, Dickens told a KBI agent that he had completed the conversion in January of 1987 at that address. However, Dickens' landlord testified that he did not rent the building to Dickens until May or June of 1987. Dickens' landlord also testified that, due to a fire in January of 1987, no one occupied the 905 North 16th Street location from January to March of 1987. Furthermore, the State presented testimony of Roberts' part-time mechanic that he had worked on the car in March of 1987, and that the car had a diesel engine at that time.

As noted, the car was discovered in Minneapolis, Minnesota, in October of 1987. It had been stripped down and no longer had an engine, transmission, tires, or a rear bumper. An analysis of the gas tank revealed the presence of diesel fuel, which was additional evidence that no actual conversion of the car from diesel to gasoline had taken place. Roberts and Dickens were both charged in separate informations in the district court of Johnson County with conspiracy to commit felony theft and felony theft. The cases were consolidated prior to the preliminary hearing.

When the preliminary hearing was completed, Judge Pro Tem Robert L. Morse took the case under advisement and issued a memorandum decision on February 10, 1988. He held that there was no venue in the criminal cases in Johnson County, because the criminal acts complained of did not occur in Johnson County. Judge Morse based his conclusion on the fact that the draft, while delivered to Roberts at the State Farm office in Mission, was not legally delivered until a bank accepted it and paid Roberts the money.. Because there was no evidence showing where the draft was accepted, Judge Morse concluded that no criminal act occurred in Johnson County and therefore dismissed the cases. The State filed a timely appeal pursuant to K.S.A. 1987 Supp. 22-3602(b)(1).

The sole issue presented on the appeal is whether the district court erred in dismissing the complaints because venue was improper in Johnson County. The two Kansas statutes governing venue which are applicable in this case are K.S.A. 22-2602 and K.S.A. 22-2603, which provide as follows:

"**22-2602. Place of trial.** Except as otherwise provided by law, the prosecution shall be in the county where the crime was committed."

"**22-2603. Crime committed in more than one county.** Where two or more acts are requisite to the commission of any crime and such acts occur in different counties the prosecution may be in any county in which any of such acts occur."

As a general rule, venue is a question of fact for the jury to determine. It may be established by proof of facts and circumstances introduced in evidence from which the place or places of commission of the crime or crimes may be fairly and reasonably inferred. *State v. Pencek,* 224 Kan. 725, 729, 585 P.2d 1052 (1978).

In order to determine proper venue, it is necessary to know where each element of the crime occurred. Conspiracy requires: (1) an agreement (2) with another person (3) to commit or to assist in the commission of a crime and (4) *an overt act in furtherance of the conspiracy.* K.S.A. 21-3302. Felony theft (as alleged by the State) requires: (1) an intent to permanently deprive, (2) *obtaining control of property through deception and* (3) an amount over $150. K.S.A. 1987 Supp. 21-3701.

On the conspiracy charges, there is insufficient evidence to conclude where any agreement to defraud State Farm may have been formed. Roberts and Dickens were apparently social acquaintances, and the agreement to defraud State Farm may have

been made in Leavenworth County (where Roberts lived) or in Wyandotte County (where Dickens worked). It is clear, however, that the overt act of deception (the presentment of an allegedly phony receipt) occurred in Johnson County at the State Farm office. Under the guidelines of K.S.A. 22-2603, prosecution could be in any one of the three possible counties. Thus, Johnson County was a proper venue for the conspiracy charges.

The theft charges are not so easily disposed of. An intent to permanently deprive could have been formed in Leavenworth, Wyandotte, or Johnson Counties. Proof of venue based on the formation of intent presents practical problems and would be difficult to establish. The third element, the amount of $150, is easily proven by the amount of the draft and the difference in value between a diesel Cadillac and a gasoline Cadillac.

It is the second element, obtaining control of property through deception, that troubled the district court. Just as in the conspiracy charges, the obtaining of property occurred in Johnson County. Roberts presented a receipt or billing statement for the engine conversion to State Farm's agent in the Mission office of State Farm. It is clear that Roberts intended to use the receipt in order to increase the amount of the settlement she would receive from State Farm. Through this alleged deception, Roberts obtained control over a draft for $15,376. The question then becomes whether this draft constituted "property."

The trial court ruled, in effect, that the draft was not property until Roberts presented it for payment. In other words, Roberts did not have control over the money until she cashed the draft. The court reasoned that, because no evidence was presented as to where Roberts cashed the draft, there was no evidence as to where she obtained control of the money. Thus, the court decided, there was no evidence that the proper venue was in Johnson County.

The trial court relied on various provisions of the Uniform Commercial Code. The reliance is misplaced because "property" is clearly defined in K.S.A. 21-3110(16):

"(16) 'Property' means anything of value, tangible or intangible, real or personal."

"Personal property" is defined in K.S.A. 21-3110(15):

"(15) 'Personal property' means goods, chattels, effects, evidences of rights in action and *all written instruments by which any pecuniary obligation, or any*

*right or title to property real or personal, shall be created, acknowledged, assigned, transferred, increased, defeated, discharged, or dismissed."* (Emphasis supplied.)

A draft, also known as a bill of exchange, is a negotiable instrument. K.S.A. 84-3-104. It is an order to pay a sum certain in money. Black's Law Dictionary 443 (5th ed. 1979). It is thus a written instrument creating a pecuniary obligation. Under the Kansas statutes, a draft is "property."

At common law, commercial paper could not be subject to larceny or theft, but the modern rule is different.

"Now, however, checks, bills of exchange, promissory notes, bonds, and other choses in action, securities, or written instruments of value, are, by statute, quite generally made subjects of larceny. Under such a statute, both an unindorsed check payable to order and one indorsed in blank are subjects of larceny, and the same is true of an undelivered check, for even an undelivered and unindorsed check, although of no value to the taker, is of value to the payee. It has been pointed out, however, that a check in a sense is property whose value is wholly relative, and unless there is money of the drawer in the bank named therein at the time of presentment for payment, the check but evidences an agreement to pay, and is subject to explanation, contradiction, or entire defeat of value, as are other similar instruments." 50 Am. Jur. 2d, Larceny § 64, pp. 232-33.

While commercial paper can be the subject of a theft, the value to be placed on it is not always clear.

"In the case of commercial paper, in many jurisdictions local statutes provide that the value of such paper of specified kinds shall be the amount due thereon or secured thereby which remains unsatisfied. Other statutes provide that the amount due shall be only prima facie evidence of the value of the instrument. In the absence of statute, some authorities regard the value of a check as its face value, while others appear to favor different criteria of value, or are inconclusive on the question, and there is authority for the view that the value of a check is purely a question for the determination of the jury. The cases likewise throw little light on how the value of a bill of exchange shall be determined." 50 Am. Jur. 2d, Larceny § 46, p. 212.

For purposes of this case, it is clear that the draft had value and was therefore "property" under the statute. It is not necessary, however, to determine what value the draft actually had. That question should be remanded for determination by the trier of fact to decide which portion of the draft value was rightfully Roberts' (as settlement for the theft of her car) and which portion (if any) was obtained as a result of deception.

Because a draft is "property" under Kansas law, receipt of the draft through the use of deception constituted "[o]btaining by deception control over property." K.S.A. 1987 Supp. 21-3701.

This control was obtained in Johnson County, and, therefore, venue for the felony theft charges existed in Johnson County.

We have thus concluded that the trial court erred in dismissing the complaints for lack of venue jurisdiction in Johnson County.

The trial court did not make a determination whether a crime was committed and thus the issue of probable cause presented at the preliminary hearing was not determined. Under the circumstances, we reverse and remand the case with instructions to the district court to reinstate the complaint and to hear and consider the State's evidence against each defendant and to proceed with the preliminary hearing as required by law.