NOT DESIGNATED FOR PUBLICATION

No. 125,341

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KURTIS LEE NICHOLS,
*Appellant.*

MEMORANDUM OPINION

Appeal from Wabaunsee District Court; JEFFREY R. ELDER, judge. Not submitted for oral argument. Opinion filed October 25, 2024. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GARDNER and CLINE, JJ.

PER CURIAM:  A jury convicted Kurtis Lee Nichols of theft of over $100,000 based on evidence that he had made improper payments to himself from his employer's account. Nichols appeals, arguing improper venue and instructional error. Finding no reversible error, we affirm.

*Factual and Procedural Background*

Nichols started working at Perfection II Masonry, Inc., in 2019. Nichols worked for Charles Lillich—the president, half owner, and day-to-day operator of Perfection II, which employed around 20 people. The company's store is in Alta Vista, a small community in Wabaunsee County. When he started, Nichols worked in the company's office, doing several jobs, including estimating jobs, helping with payroll, paying bills, and dealing with contractors and vendors.

When Lillich's wife died in May 2019, Nichols took over her responsibility as the "sole payroll operator," giving him full control of Perfection II's payroll system. This included access to the company's check stamp and software system, QuickBooks, from around June 2020 to June 2021. Nichols issued all the company's paychecks, including his own, logged his own work hours, and controlled all payment for bills and company expenses. Nichols prepared and printed each check using a computer, printer, and stamp in Perfection II's office in Lillich's Morris County house. The checks automatically included Perfection II's banking information, including its address and account, routing, and check numbers. Nichols was not required to request permission to issue any checks for payment and thus performed these tasks without oversight.

Perfection II banked at Farmers & Drovers Bank in Alta Vista. In June 2021, a bank representative called Lillich and asked to meet with him. During this meeting, Lillich discovered several unauthorized checks listing Nichols as the payee, totaling around $188,000. Before this, Lillich had never looked at the checks Nichols printed.

Sheriff's Deputy John Sumner later executed a search warrant of Nichol's home in Alta Vista and recovered several checks issued from Perfection II, including one for $2,500. Sumner also found gambling notes and passwords. The State charged Nichols

with theft of over $100,000 in violation of K.S.A. 21-5801(a)(1), (b)(1), and destroying a written instrument.

At Nichols' trial, Janice Erichsen (an accountant and bookkeeper for Perfection II) explained that she and Nichols were the only persons who knew the QuickBooks password. While "reconciling the bank statements, [she] ran across checks that had been deleted from the QuickBooks register." She added that it was unclear what some checks were written for. Her three-page report of her review of the QuickBooks data was admitted at trial. She sorted the problematic checks into three categories: (1) checks deleted from the QuickBooks register; (2) duplicated checks; and (3) "employee embezzlement-other." The first page listed seven unauthorized checks from 2020. Two of them had been deleted from the QuickBooks register, but payment still cleared from Perfection II's bank account. The rest of Erichsen's report summarized information from 2021 and showed the number of unauthorized checks increased to 46. In 2020, Perfection II lost $7,407.27 from the payment of the unauthorized checks. In 2021, this increased to $108,395.85, totaling $115,803 over the two-year period. After considering the amount in net pay back from authorized loans, the total unauthorized amount totaled $107,465.22.

Testimony from other witnesses also supported the State's charges against Nichols, but we need not repeat it here as it does not relate to the issues on appeal.

Nichols testified in his defense at trial. His defense theory was that someone else had taken financial advantage of him and of Perfection II. He claimed he had received scam calls from someone claiming to work for Google. He answered one of these calls and spent around an hour talking to the person. Through this conversation, the caller allegedly gained access to Nichols' computer and "got a couple hundred bucks or something, and that was about it." Nichols also testified that in June 2021, someone hacked into his bank and cryptocurrency accounts. He also alleged that someone transferred money from his bank account to his Coinbase account. Nichols claimed that

his deposit limit increased from $1,000 to $100,000 overnight and someone was trying to pull large amounts from his account. He reported this activity to Coinbase, which then locked his account. He also contacted Experian.

The jury convicted Nichols on both charges. The district court sentenced him to a term of 34 months in prison for the theft and a consecutive term of 7 months for destroying a written instrument.

Nichols timely appealed. The parties later jointly moved to vacate Nichols' conviction for destroying a written instrument, agreeing that the district court lacked venue. This court granted that motion and retained jurisdiction over the remaining issues.

*Did the District Court Err in Exercising Jurisdiction Over Nichols' Case?*

Nichols first claims that Wabaunsee County lacked venue to try him for theft.

*Preservation*

The record does not show what, if any, findings the district court made regarding venue. It thus seems that Nichols raises this argument for the first time on appeal. Yet because venue raises a jurisdictional issue, we may consider it despite preservation concerns. See *State v. McElroy*, 281 Kan. 256, 264, 130 P.3d 100 (2006) ("We note that the defendant's failure to object to venue at trial is irrelevant because venue is a matter of jurisdiction. Lack of jurisdiction is not a waivable defense and may be raised for the first time on appeal."), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016).

*Standard of Review and Basic Legal Principles*

Venue, unless specified in the statute, is not an element of the crime, but is a necessary jurisdictional fact that must be proven by the State. *State v. Kendall*, 300 Kan. 515, 530, 331 P.3d 763 (2014). Whether jurisdiction exists is a question of law over which this court exercises unlimited review. In evaluating the sufficiency of the evidence supporting venue, we view the venue evidence "'in a light most favorable to the prosecution.'" *State v. Hillard*, 315 Kan. 732, 775, 511 P.3d 883 (2022).

"As a general rule, venue is a question of fact for the jury to determine . . . . Venue may be established by proof of facts and circumstances introduced in evidence from which the place or places of commission of the crime or crimes may be fairly and reasonably inferred." *State v. Pencek*, 224 Kan. 725, 729, 585 P.2d 1052 (1978).

*Venue for felony theft existed in Wabaunsee County.*

The State charged Nichols with theft of over $100,000 in violation of K.S.A. 21-5801(a)(1), (b)(1). The State thus accused Nichols of "[o]btaining or exerting unauthorized control over property or services," "with intent to permanently deprive the owner of the possession, use or benefit of the owner's property or services." K.S.A. 21-5801(a)(1). Nichols argues that the evidence showed that he committed theft in Morris County rather than Wabaunsee County because that is where he exerted control of the money by generating the unauthorized checks in Perfection II's office in Morris County.

Generally, the proper venue for a criminal prosecution "shall be in the county where the crime was committed." K.S.A. 22-2602. K.S.A. 22-2603 provides that venue for crimes occurring in more than one county may lie in either county: "Where two or more acts are requisite to the commission of any crime and such acts occur in different counties the prosecution may be in any county in which any of such acts occur." K.S.A.

5

22-2609 addresses venue in theft cases: "When property taken in one county by theft or robbery has been brought into another county, the venue is in either county."

The parties dispute which of Nichols' acts was the requisite act to establish theft—the obtaining or exerting of control over Perfection II's money. See K.S.A. 21-5801(a)(1). Nichols argues that the theft occurred when he drafted and printed the checks in Lillich's office, but he cites no legal authority for his argument that merely printing unauthorized checks to himself enabled him to control Lillich's money, as the theft statute requires.

The State cites *State v. Dickens*, 243 Kan. 574, 757 P.2d 321 (1988). There, our Supreme Court considered whether venue for a charge of theft was proper in Johnson County where the defendant defrauded an insurance company for payment of a vehicle. A representative for the company delivered a "draft" for payment to the defendant in Johnson County. No evidence showed where the defendant cashed the draft. Given this, the district court found that the State could not establish "control" to prove theft until the defendant cashed the check and thus obtained control of the money, so Johnson County lacked venue.

But on appeal, our Supreme Court reversed, finding the two Kansas statutes governing venue were K.S.A. 22-2602 and K.S.A. 22-2603. *Dickens*, 243 Kan. at 576. The court did not consider K.S.A. 22-2609, authorizing venue in either county when theft occurs. The *Dickens* court found the draft itself was property, and theft occurred when the defendant took physical possession of it: "Because a draft is 'property' under Kansas law, receipt of the draft through the use of deception constituted '[o]btaining by deception control over property.' K.S.A. 1987 Supp. 21-3701. This control was obtained in Johnson County, and, therefore, venue for the felony theft charges existed in Johnson County." 243 Kan. at 578-79. This analysis tends to support Nichols' argument that control occurred when he took physical possession of the unauthorized checks in Lillich's office.

6

But *Dickens* is distinguishable. K.S.A. 21-5801(a)(1) criminalizes "unauthorized control" and Nichols arguably had authority to control the checks in Lillich's office as he did. But he did not have the authority to have unauthorized payment drawn out of Perfection II's account. We find this case more like *State v. Gadbury*, No. 72,006, 1996 WL 35069525 (Kan. App. 1996) (unpublished opinion). In that case, the State charged Gadbury with misdemeanor counts of obtaining monies by false pretenses from his employer. He allegedly did this by cashing checks from his employer's bank account and retaining the proceeds for personal use. None of the checks were written in Stafford County, where Gadbury's employer's bank account was. The district court found the location of the drawee bank established venue jurisdiction.

This court upheld the district court's decision, finding the "overt acts of cashing checks caused those checks to be presented at the drawee bank in Stafford County, and the presentment of the checks was necessary to complete the theft from [the employer']s bank account." 1996 WL 35069525, at *1. The panel referenced *State v. Johnson*, 109 Kan. 239, 244, 199 P. 104 (1921), as support:

> "Citing a prior similar version of K.S.A. 22-2603 in *State v. Johnson*, 109 Kan. 239, 244, 199 Pac. 104 (1921), the court held that the situs of the drawee bank was a proper venue for an embezzlement prosecution for unauthorized charges against an account with the bank. The court reasoned that regardless of where the check left the defendant's hands, the defendant consummated the embezzlement when the check was presented to the drawee bank. 109 Kan. at 244.
>
> "As in *Johnson*, Gadbury consummated the thefts when the checks were presented to the drawee bank in Stafford County. The district court properly concluded that under K.S.A. 22-2603 Stafford County was the proper county of venue." *Gadbury*, 1996 WL 35069525, at *1

Persuaded by these cases, we find Nichols did not commit theft until he presented the checks to Perfection II's bank for payment.

Still, Nichols argues that the primary location of Perfection II's bank—Farmers & Drovers—should control and is in Morris County. As factual support, Nichols points to a Farmers & Drovers bank statement, which lists its addresses in both Morris and Wabaunsee counties but states the primary office's address in Morris County in the document heading. This citation provides scant factual support. And Nichols provides no legal support for his argument that the principal location must control.

On the other hand, Lillich testified that Perfection II banked with Farmers & Drovers in Alta Vista, which is in Wabaunsee County. Their employees made Lillich aware of the unauthorized payments from his company's account throughout the underlying proceedings. And Nichols completed his commission of theft under K.S.A. 21-5801(a)(1) when he presented the checks to Perfection II's bank in Wabaunsee County. Viewing the evidence in the light most favorable to the prosecution, venue was proper in Wabaunsee County. See K.S.A. 22-2603.

*Was the Absence of Lesser Included Offense Jury Instructions for Multiple, Individual Acts of Theft Clear Error?*

Nichols next claims that the district court committed reversible error by failing to give lesser included jury instructions. The district court instructed the jury on one lesser degree of theft, a value of less than $100,000 but more than $25,000. Nichols did not object to this instruction but now argues that the district court should have given lesser degree instructions for each of his 50 or so individual acts of theft.

Our review of alleged instructional error follows a multi-step process:

"First, the court decides whether the issue was properly preserved below. Second, the court considers whether the instruction was legally and factually appropriate. Third, upon a finding of error, the court determines whether that error is reversible. Whether the

instructional error was preserved will affect the reversibility inquiry in the third step of this analysis. [Citation omitted.]" *State v. Couch*, 317 Kan. 566, 589, 533 P.3d 630 (2023).

Nichols did not object at trial, so we review the instruction for clear error. *Couch*, 317 Kan. at 590. Clear error will be found only if we are "firmly convinced that the jury would have reached a different verdict had any instructional error not occurred." 317 Kan. at 590. The party claiming clear error has the burden to show both error and prejudice. *State v. Crosby*, 312 Kan. 630, 639, 479 P.3d 167 (2021). We assume that lesser included offense instructions were both legally and factually appropriate and focus on whether any error in not giving them was clear error.

At trial, Nichols maintained his complete innocence and accused an unknown third party of committing these offenses and offenses against him. This "all or nothing" approach to his defense gave the jury only two options—convict or acquit. Nichols does not firmly convince us that the result of the trial would have been different had the instructional error not occurred. Cf. *State v. Metzger*, No. 86,833, 2002 WL 35657580, at *3 (Kan. App. 2002) (unpublished opinion) (finding no error in not giving multiple acts instruction based on the defendant's "all or nothing" defense in criminal damage to property case). This conclusion is buoyed by the fact that the district court did instruct on one lesser included offense—theft of a value of less than $100,000 but more than $25,000—and the jury did not choose to convict Nichols of that. Accordingly, the absence of lesser included offense instructions did not amount to clear error.

Affirmed.

9